# Chandler *v.* Tardy.

## *Bill in Equity to Establish Title.*

1. *Claim of title; when must fail.*—A claim of title to land, through an instrument which is not recorded, will fail against one purchasing and receiving a conveyance in good faith, for a valuable consideration, without notice, actual or constructive, of such claim.

2. P. was the original source of title to lands. In the year 1852, he conveyed by deed, attested by two witnesses, an undivided sixth interest in the north half of a certain square, to C., and afterwards, in the same instrument, conveyed his undivided sixth interest in the south half of the same square to C., for the use and benefit of his son, J. This instrument was not proved or acknowledged for record or recorded. In 1856, P. conveyed his undivided interest in the same lands, on valuable consideration, to C. in fee. This deed was duly acknowledged and recorded. C. mortgaged the lands in 1857 and 1858 to W., who purchased under decree for foreclosure, and afterwards sold in 1864 to T.; neither W. nor T. then, or before, having any knowledge or notice of the deed of 1852. After T.'s purchase, it was found among C.'s papers. In 1866, on bill for partition among tenants in common, three of the lots, in the south half of said square (to one of which J. claimed to be entitled upon division, as owner of P.'s undivided interest), were allotted to T. as the assignee of Primrose's original undivided interest therein. The claim of J., under the deed of 1852, was brought to the attention of the court, and it was decreed that the titles to the lots be vested in T., "subject to any equity J. might establish,"

[Chandler v. Tardy.]

The decree, however, did not determine J.'s equity, but left the matter open. *Held,*

1. The deed of 1852, under which J. claimed, never having been recorded, purchasers from C. for value without notice, in good faith, and those claiming under them, were protected against J.'s claim.

2. Although the decree, upon partition, might afterwards put purchasers from T. on notice of J.'s claim, as information thereof would appear in the claim of title; yet, as T.'s purchase was made previously, when he had no notice, actual or constructive, and as the lots partitioned stood in lieu of the interest originally purchased, T. can transmit them free from any burden or charge not attaching to the undivided interest in his hands.

APPEAL from the Chancery Court of Mobile,
Heard before Hon. H. AUSTILL.
The opinion states the facts.

ALEX. MCKINSTRY, for appellant.

JOHN T. TAYLOR, *contra.*

MANNING, J.—In 1852, one Primrose, who had an undivided interest of one-sixth part in a square of ground in the city of Mobile, signed a deed, attested by two witnesses, to the late Daniel Chandler, which purported to convey to him Primrose's interest in the north half of this square; after which, in consideration of professional services rendered by said Daniel Chandler to Primrose, and of the sum of one dollar paid by Daniel Chandler, it is recited in the same instrument, that Primrose bargains, sells and conveys, remises, releases and quit-claims "unto the said Daniel Chandler, for the use and benefit of his son, John L. Chandler, one lot of land on St. Louis street, and between Royal and Water streets, hereafter to be laid out and designated, the said lot to have a front of twenty-five feet on St. Louis street, by a depth of one hundred feet to an alley-way; said lot being on the north side of St. Louis street; to have and to hold the said lot to the use and benefit of said John L. Chandler." This lot would be in the south half of the square aforesaid. Then follows a request to Primrose's co-tenants in common, "as soon as the said lots are laid out and designated, to convey one of the lots, situated and described as above stated, to the said Daniel Chandler, for the use of his son, John L. Chandler." The instrument containing these provisions, remained among the papers of Daniel Chandler, but was not proved or acknowledged for record, or recorded. The John L. Chandler spoken of in it, is the appellant in this cause, and was then about fifteen years old.

Subsequently, in November, 1856, in consideration of $18,-500, Primrose, by his deed, conveyed with warranty, "all his right, title, interest, and claim at law or in equity, it being

the one undivided sixth part of" the same square of ground aforesaid, to said Daniel Chandler, his heirs and assigns forever. The execution of this deed was acknowledged by Primrose in March, 1857, before a notary public in Mobile, and it was recorded in the office of the probate court.

In 1857 and 1858, mortgages were made by Daniel Chandler, of this and much other property, to several of his creditors, and, among others, to L. M. Wilson; who, on a sale in June, 1860, under a decree for the foreclosure of the mortgages, purchased the one-sixth interest in the south half of the square aforesaid, for $2800, and afterwards, in March, 1864, sold his right, title, and interest in the same to defendant Tardy, for $10,000 in Confederate treasury notes; neither of them having, then, or before, any knowledge or information of the existence of the instrument dated in 1852, under which appellant claims title. It was supposed, for a long time, by appellant, to have been lost; but was found by him, among his father's papers, after Tardy's purchase.

In March, 1866, upon a bill filed for a partition of the square aforesaid, and other property belonging originally to the same tract, among the tenants in common thereof, this square was divided into lots, and three of those in the south half of the square were allotted in severalty to Tardy, as assignee of Primrose's original interest of one undivided sixth therein. And at this time, as is shown by the decree of partition, the attention of the court was called to appellant's claim to an interest therein. For, a part of the decree in relation to the south half of the square, of which a map or plat was appended, reads as follows: "To the representatives of William D. Primrose, are allotted the lots numbered twenty-six, twenty-seven, and twenty-one. And it appearing that said Primrose, in his life time, sold and conveyed his right and title, and that said Tardy is the holder thereof, it is, by the consent of parties, ordered and decreed that the title to said lots be decreed to and vested in said Tardy; but subject to any equities which John L. Chandler may establish to one lot to be taken from said Primrose's share of said southern portion of said square of land, the rights between said Tardy and said Chandler not being passed on in this decree."

From this time a purchaser of the property might probably be charged with notice that John Chandler claimed a part of it, as information to this effect would be found in the chain of title. But Tardy's purchase was previously made; and the evidence of both Wilson and himself clearly proves that he had no notice of the claim now set up by Chandler when, for a valuable consideration paid, Tardy bought from

[Einstein, Hirsch & Co. v. Marshall & Conley.]

Wilson (to whom it came from Chandler's father) the original share of Primrose in the south half of the square.

Tardy thus acquired the entire undivided one-sixth which had belonged to Primrose. And as the three lots which were by the partition, set off in severalty, took the place of the undivided one-sixth, Tardy received and can transmit them incumbered, with no charge or burden which did not attach to the undivided one-sixth in his hands.

The law is very clear that where one claims title to land through an instrument which is not recorded, his claim will fail against one who purchased the land, in good faith, for a valuable consideration without notice, actual or constructive of such claim. As we have seen, Tardy did not have actual notice, and there was nothing in the claim of title from Primrose, through his deed of 1856, to appellant's father, to charge Tardy with notice of appellant's claim under the instrument of 1852. Between the two, Tardy had the better title, and that better title he conveyed to defendant, Turner.

Without considering the case in any other aspect, it is evident that we cannot grant to appellant the relief he claims.

Let a decree be entered as of the 12th day of December, 1876—the day when this cause was submitted—affirming the decree of the chancellor.