# McCarthy *v.* Nicrosi.

*Action for Damages for Obstruction of Private Sewer.*

1. *Easement in private sewer.*—A written contract between the owners of two adjacent lots, by which it is stipulated that a sewer shall be constructed, at their joint expense, through the lower lot, for the drainage of water from the upper, operates in the nature of a grant, and passes to the owner of the upper lot, when the sewer has been constructed, a private easement in the lower, or an incorporeal interest in the soil over which the sewer runs.

2. *Possession as evidence of title; unrecorded deed.*—The open, notorious, and exclusive possession of land by a purchaser, claiming the land as his own, though holding under an unrecorded deed, is constructive notice of his title, whether it be legal or equitable; but, if the purchaser and his vendor are both in possession when the deed is executed, and there is no change in the possession after its execution, a third person would not be charged with constructive notice of the deed, and would be entitled to protection against it.

3. *Contracts of infant; disaffirmance of.*—To avoid a deed, or other executed agreement, entered into during his minority, an infant is not required to do any act during the continuance of his minority: any voidable executed contract may be disaffirmed by him, if it relates to personal property, either before or after reaching his majority; but he can

Vol. LXXII.

[McCarthy v. Nicrosi.]

not conclusively avoid a deed or sale of lands until after he has attained his majority.

4. *Same.*—Such voidable contract may be affirmed, by unequivocally recognizing its continued existence and binding force; and it may be disowned by some distinct and positive act, leaving no room for doubt as to the intention—such as notice, suit, entry, plea, or other act of unmistakable intention. In case of an executed conveyance of real estate, or any interest therein, mere acquiescence will not operate as a ratification, unless continued until the statute of limitations has effected a bar; *a fortiori,* when he has in the meantime parted with the title.

5. *Same.*—If an infant creates by writing a private easement in his land, and afterwards conveys the land by absolute deed to another, and ratifies the deed after attaining his majority, his subsequent ratification of the contract creating the easement is inoperative as against the grantee in the deed.

6. *Revocation of easement.*—A sewer having been constructed through defendant's lot, at the joint expense of himself and plaintiff (who owned the adjoining upper lot), under a written agreement entered into while defendant was an infant, his disaffirmance of the contract on attaining his majority would operate as a revocation of the easement created by it; and plaintiff's continued use of the sewer, after such disaffirmance and revocation, would be a nuisance, which defendant might abate by obstructing the sewer.

APPEAL from the City Court of Montgomery.
Tried before the Hon. JOHN A. MINNIS.

GUNTER & BLAKEY, for appellants.

R. M. WILLIAMSON, *contra.*

SOMERVILLE, J.—The present case is an action of trespass, brought by the appellee, Nicrosi, against one McCarthy and others, for obstructing a sewer running through defendants' premises, in such manner as to cause the rain water to flow back on plaintiff's premises, thereby resulting in certain damages. which are specially averred in the complaint. The only items of actual damage proved were—1st, the cost of constructing another sewer, for the future drainage of plaintiff's lot; 2d, the expense incurred in building the sewer obstructed, which was built, or repaired, under license from the defendant, McCarthy.

The plaintiff's right to this sewer is derived from a written contract in the nature of a grant from McCarthy to himself, made in November, 1876, by which it was stipulated, that the sewer should be constructed at the *joint expense* of the parties; and this was done in the fall of the following year, at a cost of about thirty-five dollars. Nicrosi was, under the provisions of this agreement, to have the right to the use of the sewer as a *conduit* for the flow of water by natural drainage from his premises. It is obvious that he thus acquired more than a mere license. It was a private easement, or incorporeal interest in. the soil itself.—Walker's Amer. Law, 5th ed., 286.

[McCarthy v. Nicrosi.]

There is some controversy about the title to the lot through which this sewer was permitted to run. It was in the joint possession of the defendants, McCarthy, Mrs. Parker, and her husband. In August, 1876, it was purchased from one Sayre; Mrs. Parker paying the purchase-money, and the legal title being conveyed to McCarthy; the latter claiming it by various open acts of ownership. In October, 1876, it was conveyed by McCarthy to Mrs. Parker. This deed of conveyance was *not recorded*, nor did the plaintiff have actual notice of its existence.

The principle may be taken as admitted, that the open, notorious and exclusive possession of real estate by a vendee, holding under an unrecorded deed, and claiming the land as his own, is constructive notice of the vendee's title, whether it be legal or equitable in its nature.—Wade on Notice, § 273; *Ludlow v. Gill*, 1 Amer. Dec. 694, *note; Rupert v. Mark*, 15 Ill. 540; *Burt v. Cassety*, 12 Ala. 734; *Sawyers v. Baker*, 66 Ala. 292; *Hendricks v. Kelly*, 64 Ala. 388; *Brunson and Wife v. Brooks*, 68 Ala. 248. Where the possession of the vendor and vendee, however, is *joint* at the time of the sale and conveyance, and its ambiguity is not relieved by the vendor's subsequently vacating his occupancy, we apprehend that the reason of the foregoing principle would not apply. This joint possession would not operate as constructive notice of an unregistered deed, because there would be no visible act which is calculated to put strangers on inquiry as to the changed attitude or *status* of the title, created by a secret conveyance from the vendor to the vendee.—*Smith v. Yule*, 31 Cal. 180; Wade on Notice, §§ 302, 303; 3 Wait's Act. and Def. 450, 451. This principle is regarded as a just exception to the general rule, invoked by appellants' counsel, that when *several* persons are in possession of property, and one of them has the legal title, the possession is presumptively his in whom the legal title is vested.—3 Wash. on Real Estate, 117. Nor does it contravene the rule, that the possession of the tenant may be regarded as notice of his landlord's title (Wade on Notice, § 286), or that the possession by the husband, of the separate estate of the wife, may be referred to his representative capacity as her trustee.—*Brunson and Wife v. Brooks*, 68 Ala. 248. To operate as *notice* of an unregistered deed, however, the possession of the *vendee* must be *exclusive*, so far, at least, as concerns the vendor.—Wade on Notice, § 290.

The plaintiff, being the purchaser of the easement in question for value, would, under the influence of the principle above announced, be protected against the unrecorded deed from McCarthy to Mrs. Parker, both of whom were jointly in occupation of the lot through which the sewer was constructed.

Wade on Notice, § 226; *Nolen v. Gwyn*, 16 Ala. 725; *Preston & Stetson v. McMillan*, 58 Ala. 84; Code, §§ 2200, 2201.

The question of controlling influence here, in our judgment, arises from the fact of McCarthy's *infancy*. At the time of his contract with the plaintiff—in November, 1876—he was under the age of twenty-one years; and the bill of exceptions shows that he elected to disaffirm the contract prior to the time when the present cause of action accrued, which was in August of the year 1879. There can be no doubt of the principle, that, in order to enable an infant to avoid a deed, or other executed agreement, no act on his part during the period of his infancy is necessary.—*Phillips v. Green*, 13 Amer. Dec. 124. And the authorities are equally uniform in holding, that, *after* reaching his majority, he can elect to confirm or disaffirm any voidable executed contract entered into by him while in a state of minority.—2 Kent's Com. 235–6; *Overbach v. Heermance*, 14 Amer. Dec. 546. It seems, too, to be the better doctrine, that this disaffirmance, or avoidance, may as well be effected *before*, as after majority, at least so far as concerns personal property.—Bishop on Contracts, § 276; 7 Wait's Act. & Def. 142–3. "As to the *time* of an infant's disaffirmance of his contract, it may be said in general," says Mr. Parsons, "that he can not avoid a sale of *lands*, conclusively, until of full age, although he may enter while under age, and take and hold the profits."—1 Parsons on Contr. 322.

The usual rule is, that any such contract may be affirmed by unequivocally recognizing its continued existence and binding force. So, it may be disavowed by some *distinct and positive act*, leaving no room for doubt as to the intention of the party. Bishop on Contracts, § 276. This may be effected by *notice* of disaffirmance, by *suit, pleas*, or *entry* upon real estate, or *other unmistakable act of dissent, or of confirmation*, as the case may be.—2 Kent's Com. 237–8; 1 Par. Contr. 322.

In the case of an executed conveyance of real estate, or any interest in it, *mere acquiescence* will not operate as a ratification. There must be some positive and unequivocal act performed for the purpose, which is inconsistent with the subsequent right to repudiate it, unless the sale and conveyance have been acquiesced in for a length of time sufficient to perfect a bar under the operation of the statute of limitations.—*Eureka Co. v. Edwards*, 71 Ala. 248. "The reason is, that by his silent acquiescence he [the infant] occasions no injury to other persons, and secures no benefit, or new rights, to himself."—2 Greenl. Ev. § 367, *note 1; Jackson v. Carpenter*, 11 John. 539; *Tucker v. Morehead*, 10 Pet. 58; 1 Parsons on Contr. 325.

The mere acquiescence of McCarthy in suffering the water to continue flowing through the sewer after he attained his ma-

[Hurst & McWhorter v. Bell & Co.]

jority, which was in July, 1877, would not be such a positive act as that we could construe it into a ratification, even had he continued to be the owner of the premises. *A fortiori* is this true, in view of the fact that he had parted with the title by the deed to Mrs. Parker, executed in October, 1876. And if he first ratified the deed to Mrs. Parker after attaining legal majority, a subsequent ratification of his contract of grant to the plaintiff would be unavailing for any purpose.—*Derrick v. Kennedy*, 4 Port. 41 (s. c., 4 Smith's Cond. Rep. 137).

The ruling of the City Court was in conflict with these views, and, therefore, erroneous.

The evidence shows that McCarthy elected to disaffirm his contract soon after attaining his majority. This operated to revoke the easement conferred by it, and after such revocation the plaintiff no longer possessed the right of drainage through the sewer. His continued use of it for this purpose would be a nuisance, which the defendants would have a right to abate by obstructions, or in any other reasonable way not unnecessarily injurious to the plaintiff.—2 Greenl. Ev. §§ 466, 467.

These views render it unnecessary to consider the other assignments of error. In the rulings of the court on the evidence we see no error. These we do not consider at length, as they involve but the simplest of fundamental principles.

Reversed and remanded.