# Scotch Lumber Co. *v.* Sage.

*Bill in Equity for Partition of Lands.*

[Decided June 12, 1902.]

1. *Bona fide purchaser without notice; acquires title as against lost deed.*—One who purchased land for value without notice, either actual or constructive, of the existence of a deed which was never recorded but is alleged to have been lost, is a *bona fide* purchaser and acquired a perfect title as against said deed and those claiming thereunder.

2. *Same; what not constructive notice.*—Where one claiming an undivided 6-7 interest in land files a bill seeking to have the land .partitioned between him and the owner of the remain-ing 1-7 interest, and the latter claims to have owned a 6-7 interest by reason of a deed which was lost and there is no privity between the complainant and the grantee in said lost deed, the recording of said grantee's deed to one through whom the respondent claims, which deed purports to convey a 6-7 interest, is not constructive notice that the grantor in the last mentioned deed ·claimed to have owned a 6-7 interest.

3. *Same; when possession not sufficient to put complainant upon notice.*—In such case, where it appears that when the com-plainant negotiated and paid for and received a deed to the 6-7 interest in the lands in controversy, his grantor was in possession under a complete record chain of title, claiming to own that interest, it can not be said that there was any-thing in the possession claimed under the lost deed to put the complainant upon notice of the respondent's claim;

neither the respondent nor any one under whom he claims could have derived title, being in the open, visible, exclusive and unambigious possession of said lands, which is essential in order for possession to operate as notice of the lost and unrecorded deed.

*Notice acquired by attorney; when not binding upon his client.* Notice acquired by an attorney of a claim to land adverse to that of his claim, is not binding upon said client when it appears that he acquired his knowledge before he was employed by said client to purchase said lands for him, and it is further shown that he represented the sellers of said lands and was personally interested in making the sale to his client, and was, therefore acting in his own interest and adversely to that of his client, without any knowledge on the part of the latter of his dual relation.

5. *Adverse possession by tenant in common; can not exist.*—A tenant in common can not hold adverse possession to an undivided part of the common property.

6. *Recitals in act of legislature; not sufficient to overcome statements in deed.*—The recitals in an act of the legislature will not of themselves overcome the recitals in a deed.

APPEAL from the Chancery Court of Clarke.

Tried before the Hon. THOS. H. SMITH.

The bill in this case was filed by the appellee, Henry M. Sage, against the appellant, the Scotch Lumber Company. The purpose of the bill is to partition the lands described in the bill. The complainant claims to own a 6-7 undivided interest, and alleges that the defendant is the owner of a 1-7 undivided interest.

The respondent, by answer, denies the ownership of the complainant of the said 6-7 undivided interest, and alleges that it not only owns the 1-7 undivided interest as alleged in the bill, but that it owns all of the said lands, and the complainant has no interest whatever therein.

The only material issue raised by the bill and answer is as to the ownership of the 6-7 undivided interest in the lands claimed by the complainant.

Complainant and respondent claim title from a common source. Stephen S. Wiggins owned a certain portion of the lands, his wife, Louisa, owned a certain por-

tion, and their son, Elias R. Wiggins, owned the remainder. Elias R. Wiggins died unmarried, and intestate, his estate owing no debts, during the civil war, and there was no administration on his estate. Stephen S. Wiggins also died intestate about the same time, owing no debts, and no administration has been had on his estate. Louisa died intestate in the year 1871, leaving no debts, and no administration has been granted upon her estate. Stephen S. and Louisa left surviving them the following children, who were also brothers and sisters of Elias R. Wiggins, to-wit: Isabella, John C., Perminda, Elizabeth, Clara, Margaret and Stephen Wiggins—five daughters and two sons. Isabella is now the wife of Joseph Sheffield. Perminda is now the wife of John H. Horton. Elizabeth was the wife of George W. Davis, but she is now dead intestate, and left surviving her husband, George W. Davis, and two children, Willie and Wiley Davis. Clara was the wife of the same Joseph Sheffield, who is now the husband of Isabella, but is dead, intestate, leaving surviving her husband, Joseph Sheffield, and one child, David Sheffield. Margaret died, intestate and unmarried, but left one child, William Wiggins, who is also known as William Sheffield. John C. Wiggins is living. Stephen L. Wiggins is dead, but died intestate, and left surviving a widow, Martha, and four children, to-wit, Percy, Daisy, Annie and Reuben.

Up to the time of the death of Louisa Wiggins, in 1871, these lands remained in the possession of the Wiggins family, the widow and children residing upon them together. After her death the children who were then unmarried lived in one settlement on the lands, and John C. Wiggins also lived on another settlement on them. After the death of Clara, the wife of Joseph Sheffield, who died shortly after Louisa, said Joseph, together with his children, also moved upon the lands. After the expiration of a few years from the death of Louisa Wiggins, all of the Wigins heirs had moved off of the land. The lands then remained vacant and unoccupied till the spring of 1878, when Joseph Sheffield, and his wife, Isabella, and Margaret Wiggins, who

lived with them, and the child by Joseph Sheffield's
first marriage to Clara Wiggins, moved back on the
land, and remained a short time, and then moved off.
The lands then remained unoccupied for a short time,
when a man named Whatley moved upon them in De-
cember, 1878, and remained there till the summer or
fall of 1879. Whatley occupied as the tenant of John
Baggett. After Whatley moved off, the lands were un-
occupied, and no one had the possession till the spring
of 1896. In May, 1896, John Horton, as the tenant of
John F. Proctor, took possession of the lands, and cul-
tivated a portion of them that year. In 1897 Horton
held over as the tenant of Robert E. Bowden, and sub-
rented a portion of the lands to Joe Pritchett, who cul-
tivated them that year, 1897. Horton has continued in
possession to this date.

There were three separate settlements on the land,
with clearings round each, and also separate cleared
lands suitable for farming purposes. The remainder of
the lands were woodland.

The title of the complainant was shown by the follow-
ing written instruments introduced in evidence: Cer-
tificate of the register of the land office, showing the
entry of the land. Deed from R. R. Wells and others
to S. S. Wiggins. Deed from Adam Sheffield to Stephen
S. Wiggins. Power of attorney from George W.
Davis, Willie and Wiley Davis. Power of attorney
from Isabella Sheffield and her husband, Joseph, David
Sheffield and his wife, Mary, and William T. Sheffield
or Wiggins, to John H. Horton. Isabella Sheffield and
husband, Joseph, David Sheffield and wife, Mary, Wil-
liam T. Sheffield, G. W. Davis, Wiley and Willie Davis,
by John H. Horton, attorney in fact, for each of said
parties, and John H. Horton and wife, Perminda, to
John F. Proctor, deed of May 7, 1897, correcting former
deeds which had been executed May 8, 1896, and May
16, 1896, respectively. Deed from John F. Proctor to
Robert E. Bowden, of September 11, 1896. Deed from
heirs of Stephen S. Wiggins, deceased, to Robert E.
Bowden, of January 18, 1897. Deed from Robert E.
Bowden to Henry M. Sage, of May 31, 1897.

The title relied upon for the respondent was shown by the introduction in evidence of the following written instruments: John C. Wiggins and wife to John Baggett, deed of December 6, 1877. Deeds from the several heirs of John Baggett, deceased, passing their respective interests in the lands to N. M. Baggett. N. M. Baggett and wife to Noble and Kimbrough. Noble and Kimbrough to Mattie Baggett. Decree of the chancery court in the case of Christian & Craft Grocery Co. and others v. N. M. Baggett and others, ordering the sale of the lands. Deed from James C. Savage, register, to William D. Dunn and Christian & Craft Grocery Co., dated July 11, 1896. Deed from Wm. D. Dunn and wife to John W. Pertis, of July 23, 1896, conveying an undivided interest. Christian & Craft Grocery Co. to Wm. D. Dunn, July 23, 1896, deed of partition of undivided interest. Christian & Craft Grocery Co. to Alexander Gunn, dated January 20, 1897. John W. Portis and Wm. D. Dunn and wife to Alexander Gunn. Alexander Gunn and wife to Scotch Lumber Company. Certified copy of will of John Baggett.

The respondents offered parol testimony to establish an alleged lost and unrecorded deed from the other six heirs of Stephen S., Louisa and Elias R. Wiggins to John C. Wiggins for the 6-7 undivided interest in the land.

The complainant showed that N. M. Baggett commenced a suit in the chancery court of Clarke county in the name of his wife, Mattie, and for her, on June 15, 1892, to have re-executed this alleged lost deed, the Wiggins heirs, except John C. Wiggins being parties to the suit, and that the bill was dismissed in February, 1893. The other facts of the case necesary to an understanding of the decision on the presnt appeal are sufficiently shown in the opinion.

On the final submission of the cause on the pleadings and proof the chancellor decreed that the complainant owned an undivided 6-7 interest in the lands involved in the suit, while the defendant owned an undivided 1-7 interest in the said lands; that the complainant was

[Scotch Lumber Co. v. Sage.]

entitled to the relief prayed for and ordered the appointment of commissioners for the purpose of partitioning the lands between the complainant and the defendant according to their respective rights and interests declared in said decree.

FRED S. BALL and NORMAN GUNN, for appellant.—We cannot comprehend how it can be seriously contended, after reading the testimony, that the appellant failed to lay a proper predicate for the introduction of secondary evidence of the lost deed and its contents. All the rule requires is proof that such a deed did once exist; that it was genuine; and that diligent search has been made for it in all proper places without success. Greenleaf on Evidence (16th ed.), § 536 *b; Jernigan v. The State*, 81 Ala. 58; 13 Am. & Eng. Ency. Law, 1096, 1097 note, 1100.

The complainant cannot be held to be a *bona fide* purchaser because neither the pleadings nor the proof bring the complainant within such category. Before one can claim to be a *bona fide* purchaser for value, without notice, he must allege and prove, first, that he was a purchaser from one in possession who was seized or claimed to be seized of the legal title and at the same time briefly setting out substantially the contents of his deed of purchase with date, consideration and parties. *Craft v. Russell*, 67 Ala. 9; *Hooper, Admr., v. Straham*, 31 Ala. 175; *Johnson v. Toulmin*, 18 Ala. 50; *Boone v. Childs*, 10 Peter, 177.

LACKLAND & WILSON, *contra.*—The first thing the respondent must show to authorize secondary evidence of the contents of the alleged lost deed is its execution. *Potts v. Coleman*, 86 Ala. 94, 101; *Singer, etc., Co. v. Riley*, 80 Ala. 314. It is indispensable to the proper execution of a deed that it be signed by the grantor, and attested, and the attesting witness must be able to write, and must in fact write his own name; or else the signature of the grantor must be acknowledged as required by the statute.—Code, 982; Code of 1867, 1535;

*Hendon v. White,* 52 Ala. 597; *Carlisle v. Carlisle,* 78 Ala. 542; *Stewart v. Beard,* 69 Ala. 470; *Branch v. Smith,* 114 Ala. 463, 3.

The evidence shows, without conflict, that Margaret Wiggins and Stephen L. Wiggins were minors at the time of the execution of the alleged deed. The proof shows that they did not receive anything for the land, so they had nothing to hold onto after arriving at maturity, and no duty rested upon them to disaffirm. There was no adverse holding against them, as will appear from the testimony, of such a character that would ever bar an action. Under such circumstances, mere acquiescence, no matter for how long, would amount to a ratification.—*Hill v. Nelms,* 86 Ala. 442, 446; *Eureka Co. v. Edwards,* 71 Ala. 248; *Mortgage Co. v. Dykes,* 11 Ala. 178.

The infant's heirs may exercise the privilege of disaffirmance after his death, and do so by a conveyance of the land.—10 Am. & Eng. Ency. Law (1st ed.), 637, and note 1, 638; *Sharpe v. Robinson,* 76 Ala. 343.

Conceding that the attorney acted as Sage's agent, still notice to him would not be constructive notice to Sage, because the testimony clearly shows that he was making a profit out of the transaction, and that he was interested in the sale of the lands, and that his interest was adverse to that of Sage. Under these circumstances, the rule that notice to an agent is notice to the principal does not apply.—*Frenkel v. Hudson,* 82 Ala. 158, 162; 1 Ency. Law (2d ed.), 1145 and note 2, and cases cited.

Before notice to agent will be notice to the principal, it must appear that the notice was received by the agent pending the agency for the transaction. It is not shown that this was the case here. It appears from all the evidence that the contrary was true.—*McCormick v. Joseph,* 83 Ala. 401; *Pepper v. George,* 51 Ala. 190.

The fact that litigation had been had in the chancery court in the case of Mattie Baggett v. Joseph Sheffield *et al.,* and of Christian & Craft Grocery Co. *et al.* v. N. M. Baggett *et al.,* did not charge Sage with notice of the alleged lost deed. These cases had been

finally determined when Sage bought. It is a pending suit, and not a determined suit, that charges with notice.—*Whitfield v. Riddle,* 78 Ala. 99.

TYSON, J.—The bill in this cause was filed for the partition of lands described in it between joint owners or tenants in common thereof. Complainant claims to be the owner of a six-sevenths undivided interest, in common with the respondent, whom the bill alleged to be the owner of the remaining one-seventh. The answer of respondent denies the ownership of the complainant as alleged by him, and states the respective interest or ownership of the lands to be a six-sevenths undivided interest to belong to it, and a one-seventh to belong to complainant. After the filing of this answer, complainant amended his bill in which he set forth the claim of title under which the respondent claims to own the six-sevenths interest. In order to complete this chain of title, an alleged unrecorded and lost or destroyed deed is necessary to be established by respondent by parol evidence. This amendment also asserts title to be in complainant to a six-sevenths interest, and avers that complainant is a *bona fide* purchaser without notice of the unrecorded and lost deed under and through which the respondent claims title. This amendment, and a subsequent one filed, also invoke an estoppel against one of the grantors in respondent's chain of title. Under the view we take of this case, it is unnecessary to consider the rulings of the court in this respect. For, if respondent has failed to establish the execution, contents, etc., of the lost deed, or the complainant is shown to have paid value for the lands, and the respondent has failed to sustain the burden of proving notice to him either actual or constructive of the contents of the lost deed, if it is shown to have ever had an existence, there is no error in the decree of which appellant can complain.—*Caldwell v. Pollak,* 91 Ala. 353.

Adverse possession is also relied upon by respondent to show title in the grantee to whom the lost deed was

made. Both parties litigant claim to have derived their respective titles from the same source, to-wit, the children and heirs-at-law of the Wiggins'. There were seven of these children and the complainant shows a complete recorded chain of title to the interest claimed by him. While the respondent shows only a complete chain of title by the records of a one-seventh interest, it insists that John C. Wiggins, one of the seven children, acquired the title of all of his brothers and sisters, except one, by deed executed to him which was lost and never recorded. In view of the uncertainty as shown by the evidence, not only as to the signing of this alleged lost deed, by all of the alleged grantors, but as to its attestation, as to some of the signatures, its acknowledgment by others and its contents, and when executed, if executed at all, it is doubtful whether the proof is sufficient to warrant us in finding that it ever existed. *Elyton Land Co. v. Denny,* 108 Ala. 553. But conceding for the purposes of this opinion, that it was executed as contended for, the respondent must fail for the reason that it is not shown that complainant had any notice, either actual or constructive, of it, if it was ever made, the complainant having shown that he paid value. It will be observed that complainant does not derive his title through John C. Wiggins, or by or through mesne conveyance from him. In other words, he is not a grantor in the chain of title to any portion of the six-sevenths interest claimed to be owned by the complainant. There is, therefore, no privity between them. This being true, the record of his deed to Baggett was not constructive notice that he (Wiggins) claimed to have owned a six-sevenths interest, instead of a one-seventh. And the same may be said of the record of the other deeds in respondent's chain of title. Tiedeman on Real Property, § 817 *et seq.*; 16 Am. & Eng. Ency. Law (1st ed.), p. 800; *Gimon v. Davis,* 36 Ala. 589; *Lehman, Durr & Co. v. Collins,* 69 Ala. 127; *Burch v. Carter,* 44 Ala. 115. What, then, is there in the facts of the case to show that complainant had actual or imputable notice that John C. Wiggins or

[Scotch Lumber Co. v. Sage.]

those claiming under him ever claimed to own the entire six-sevenths interest in the lands? It is true, it was attempted to be shown that Wiggins was in the possession of the lands for some years after the lost deed was alleged to have been made to him. But the year in which this deed was executed, whether in 1870, 1871 or 1872, is not definitely shown. With the existence of the deed conceded, having shown that there was nothing upon the record to put the complainant upon notice of it, it becomes necessary to determine whether there was anything in the possession claimed under it to put the complainant upon notice. When this complainant negotiated and paid for and received his deed to the six-sevenths interest in these lands, his grantor was in possession under a complete recorded chain of title claiming to own that interest. Neither the respondent nor any one under whom it claims to have derived title was in the open, visible, exclusive and unambiguous possession of the lands, which is essential in order for possession to operate as notice of the unrecorded deed. To go back of the purchase by complainant, when Proctor purchased these lands, no one was in the actual possession of them, nor had anyone who claimed to own them had the actual, open, exclusive and continuous possession of them for several years prior thereto, notwithstanding there were, when Baggett's tenant left them in 1879, dwelling houses upon them and a part of the tract was tillable. So, then, there is nothing in the fact of possession to have put the complainant on notice of the unrecorded deed or to have even excited suspicion that his grantor did not have title to the interest he claimed to own.—*Wells v. Am. Mortgage Co.,* 109 Ala. 446; *McCarthy v. Nicrosi,* 72 Ala. 332; *Watt v. Parsons,* 73 Ala. 202; *Motley v. Jones,* 98 Ala. 443; *Griffin v. Hall,* 129 Ala. 289; Wade on Notice, § 296.

There is much contention in brief that complainant had notice of respondent's claim because Wilson, one of his attorneys in this case, knew it. There are two reasons why this contention cannot prevail. *First.* It appears that Wilson acquired his knowledge while representing Bowden or Proctor and before he was em-

ployed by complainant to purchase these lands for him. *Second.* The evidence shows that Wilson represented the sellers of these lands also and was personally interested in making the sale of them to complainant. He was really the seller, and got all of the purchase money that was paid by complainant. He was, therefore, really acting for himself, in his own interest, and adversely to that of his principal, the complainant, without any knowledge on the part of the latter of his dual relation.—*Pepper v. George,* 51 Ala. 190; *Frenkel v. Hudson,* 82 Ala. 158; 1 Am. & Eng. Ency. Law, pp. 1145, and 1149-50 and note 1 on page 1150.

It is insisted that the possession of John C. Wiggins and Baggett was adverse, and that it continued for a sufficient length of time to ripen into title, and that, therefore, respondent has a title to the six-sevenths interest in the lands claimed by it, independent of the unrecorded deed. It is entirely clear to us that the evidence is insufficient to sustain this contenton—to overcome the presumption that John C. Wiggins was holding for himself and cotenants.—*Jackson v. Elliott,* 100 Ala. 669; *Johns v. Johns,* 93 Ala. 239. Indeed, just how John C. Wiggins' possession could be adverse to the five-sevenths interest which he claims to have derived under the lost deed, which we have shown, if made, is ineffectual to pass title as against this complainant, and not adverse to the cotenant whose interest the complainant acquired, we are quite unable to understand. For the reason, that the theory of this contention is necessarily predicated upon the actual and exclusive possession by Wiggins of the lands. Certainly if it was exclusive so as to ripen into title by adverse possession as to the five-sevenths which the respondent claims that it acquired title to by adverse possession, upon the same principle it would have acquired the other one-seventh interest which it is conceded is owned by the complainant, it not being shown that the heir who owned that one-seventh interest was in possession at the time that it is claimed that John C.'s possession was adverse.

[Zion  Fountain  Lodge, etc., v. Folkes, for use.]

The remaining point necessary to be noticed is the one that Emma Wiggins, if there be in existence such a person, should have been made a party respondent to the bill.   This contention is based solely upon the difference in the recital of the names of the minor heirs of Stephen L. Wiggins in the act of the general assembly approved December 9, 1896, authorizing them to sell their one-seventh interest in these lands, and the recital of the names of the children and sole heirs of Stephen L. in a deed executed by them to Bowden on the 18th day of January, 1897.   If we should hold the recitals in this legislative act to be evidence of the facts stated therein, we could not allow it to overcome the recital in the deed that the persons therein named were at the date of its execution the "only children and sole heirs of Stephen L. Wiggins, deceased," in the absence of other evidence upon this point, and especially in face of the admission made by the pleadings, etc., in the cause.

There is no error in the record and the decree appealed from must be affirmed.

Affirmed.