(80 South. 861)

HOLLY v. DINKINS et al. (3 Div. 371–371a.)

(Supreme Court of Alabama. Jan. 23, 1919. Rehearing Denied Feb. 13, 1919.)

1. ESCROWS ⬤⇒8(1)—OPERATION AND EFFECT —DELIVERY OF MORTGAGE—TITLE.

Where deed is placed in escrow with one holding a mortgage, to be delivered upon payment of mortgage by grantee, legal title remains in grantor until payment of such mortgage.

2. VENDOR AND PURCHASER ⬤⇒233 — BONA FIDE PURCHASER—UNRECORDED DEEDS.

While a bona fide purchaser for value must connect himself with legal title, one who claims title to land through an instrument that is not recorded must fail, as against one who has purchased the land in good faith for a valuable consideration without notice, actual or constructive, of his claim.

3. ACKNOWLEDGMENT ⬤⇒6(2)—DEEDS—FAILURE TO PROBATE.

The fact that deeds were not properly probated was of no consequence if they were in fact executed, and their execution was proved without objection as to the manner of proof.

4. DEEDS ⬤⇒38(1) — DESCRIPTION — SUFFICIENCY.

Description of land in a deed, if not certain in itself, was sufficient where capable of being made certain by parol proof.

5. VENDOR AND PURCHASER ⬤⇒242 — BONA FIDE PURCHASER—BURDEN OF PROOF.

The burden is on one holding an unrecorded deed to show that a subsequent purchaser for value had notice, actual or constructive, of his equity.

6. VENDOR AND PURCHASER ⬤⇒232(2)—BONA FIDE PURCHASER—POSSESSION.

Possession, to put a purchaser upon inquiry and operate as constructive notice of rights in land, must exist at time of transaction by which his rights and interests are created.

7. VENDOR AND PURCHASER ⬤⇒232(13)—BONA FIDE PURCHASER—POSSESSION.

One purchasing land from a person in possession, and having apparent legal title, was not required to inquire of infant children of grantor living with their father as to any equitable rights which they might have in the land.

8. VENDOR AND PURCHASER ⬤⇒229(2)—BONA FIDE PURCHASER—UNRECORDED DEED.

Where grantor and wife had lived upon land for some time, knowledge by grantee of husband that husband received deed to such land from a third person after death of wife would not put him on notice of prior unrecorded deed by such third person to wife.

9. VENDOR AND PURCHASER ⬤⇒233 — BONA FIDE PURCHASER — RECORDING ACT — INFANTS.

Children claiming under an unrecorded deed are affected by recording statute, as much so as though they are in all respects sui juris, and they cannot prevail against a bona fide purchaser for value.

⬤⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Appeal from Circuit Court, Lowndes County; A. E. Gamble, Judge.

Bill by Rudolph Dinkins and another against T. B. Holly. From a decree in favor of plaintiffs, the defendant appeals, and plaintiffs bring a cross-appeal. Reversed and rendered on defendant's appeal. Cross-appeal dismissed.

J. R. Bell, of Hayneville, and Steiner, Crum & Weil, of Montgomery, for appellant.

Leader & Ewing, of Birmingham, and W. A. Gunter, of Montgomery, for appellees.

SAYRE, J. Pretermitting for the moment some questions of notice and intention, and as well some disputed facts to be stated and considered in qualification later on, the face of the transactions involved in this cause may be stated in brief as follows: In January, 1895, Mary E. Dickson, then the owner in possession of the land in suit, an improved 40-acre parcel of land near Lowndesboro, was joined by her husband in the execution of a conveyance purporting to vest an unqualified fee in Sallie B. Dinkins. Mrs. Dinkins and her husband went immediately into possession, and there remained until September, 1896, when she died intestate, leaving her husband and two children, then of very tender years, the complainants in the original bill in this cause. During the period covered by our statement thus far—and before—the property was under a mortgage which had been given to Colonel Brewer of Hayneville by Mrs. Dickson's predecessor in title, and in addition to the sum of $2,000 which she paid in cash out of her separate purse, Mrs. Dinkins assumed to pay this mortgage as a part of the consideration for the conveyance to her. January 1, 1897, the Dicksons—on the request of Dinkins and on his statement, according to the witness Dickson, that "he had lost the deed [meaning the deed to Mrs. Dinkins], or something had happened"—upon a recited consideration of $2,000 paid by Dinkins, but upon no new consideration in fact, executed a deed to Dinkins, who, being then and there in possession by his tenant Whetstone, conveyed to Holly by deed purporting to pass the entire fee in consideration of a small cash payment made by Holly to Brewer, and his three separate promissory notes for $456 each, payable to Dinkins in one, two, and three years, and his assumption of the balance due on the Brewer mortgage, amounting, principal and interest, to $600, which sum, according to the agreement of the parties to that transaction, thereby became the principal of the debt due to Brewer, assumed by Holly, and bearing interest from that date. Holly thereupon went into possession, and has so remained until this time. The three notes were paid as they matured, and on March 8, 1911, Holly paid the balance

then due upon the Brewer mortgage. At that time, along with other papers, Brewer handed to Holly the deed from the Dicksons to Mrs. Dinkins, which had never been recorded. On the same day Holly had this deed placed upon the public records of the county. On April 21, 1914, complainant Rudolph Dinkins having recently become of age, and complainant Margaret Dinkins having been relieved of the disabilities of nonage, the original bill in this cause was filed, charging that Dinkins and Holly conspired together to defraud complainants of their inheritance, or, in the alternative, that defendant, Holly, took his deed with notice of complainants' right in the premises, and praying that the deed from the Dicksons to Dinkins be canceled as a cloud upon their estate in remainder, that the deed from Dinkins to defendant, Holly, be declared to have no other legal effect than a conveyance of said Dinkins' estate for life, and for general relief. In his answer, which was made a cross-bill under the statute, Holly denied the averments of the bill circumstantially, set up the facts with reference to the title he had acquired and his payment of the mortgage debt, and prayed, in the event his title to the estate in remainder was declared void, that he be subrogated to the rights of Brewer under the mortgage that had been held by him. The chancellor decreed relief on both the original and cross bills, and against each relief so granted the parties adversely affected thereby have appealed.

On that version of the facts put forward by complainants in the original bill, defendant, Holly, acquired an estate for the life of Dinkins, who took such estate under the statute as surviving husband of the owner; that fact is expressly conceded in the complainants' bill, and will accordingly be accepted as a fact, though defendant's right and title to that part of the estate might well be determined on the identical considerations to be stated in respect to the estate in remainder, to which more properly the inquiry here relates.

It is contended for defendant that the deed purporting to convey title from the Dicksons to Mrs. Dinkins was never delivered to the grantee named therein, but was delivered in escrow to Colonel Brewer, to be delivered to the grantee when the mortgage held by Brewer should be paid in full. Upon considering the evidence on this point with due care, we feel constrained to accept this contention. Dinkins testifies to these facts, and, while he has been made the mark of much critical and uncomplimentary comment, his testimony, as between his children and his vendee, appears to us to have been given with candor, nor is it contradicted save by a witness whose memory is admittedly bad, and who has been inextricably involved in more than one important relevant statement of demonstrated error. Dinkins and this witness, the latter the husband of the grantor in the deed to Mrs. Dinkins, among themselves negotiated and managed that transaction for their respective wives, and they alone, after the lapse of more than 20 years, could be expected to remember the details. Brewer does not testify—he may be dead—but it is not disputed that when Holly had finished paying the mortgage held by him (Brewer), in 1911 he handed over to Holly the unrecorded deed from the Dicksons to Mrs. Dinkins. This fact affords strong confirmation of the testimony of Dinkins as to how and why this deed came into the hands of Brewer, for it is only by an acceptance of his testimony that this fact, itself undisputed and presumptively indisputable can be reconciled with those rules of conduct which ordinarily govern rational men, however selfish, in such matters; and while the court is not at this time concerned about the character and reputation of this witness, save as they may affect his credibility, the fact of the escrow, in connection with his situation at the time, will serve to explain his subsequent action as upon a reasonable hypothesis of human conduct, if not extenuate on moral grounds. Brewer, as a common agent, held the escrow in trust for the parties to it, but as mortgagee he had a paramount interest and right. At the time when Dinkins took his deed the condition upon which the escrow was held could never be performed by the grantee, she having died, and neither Dinkins nor his children, it is to be inferred from the evidence in the record, could hope to redeem from the mortgage within any reasonable time. He knew that the legal estate, subject to the mortgage, remained in Mrs. Dickson, and that the equity in his wife's estate was subject to foreclosure at any time. In this situation he chose to procure the deed to himself and make a sale to Holly.

[1, 2] As we have found, in effect, the legal title—a bare legal title, it is true—to the entire estate remained in Mrs. Dickson until she executed her deed to Dinkins. This results from our finding as to the escrow. But in view of our conclusion as to notice, to be stated, this result is not necessary to appellant's case; for, while a bona fide purchaser for value must connect himself with the legal estate (Shorter v. Frazer, 64 Ala. 74), the law is very clear that where one claims title to land through an instrument that is not recorded, as do appellees in this case, his claim will fail against one who has purchased the land in good faith, for a valuable consideration, without notice, actual or constructive, of such claim (Chandler v. Tardy, 58 Ala. 150).

[3-5] The execution of the deed from Mrs. Dickson to Dinkins, and of Dinkins' deed to the defendant, Holly, has not been denied on any tenable ground. The bill states an objec-

tion to these deeds on the ground that they were not properly probated; but that was of no consequence if they were in fact executed, and, as appears to have been the case, their execution was proved at the hearing without objection as to the manner of proof. It is also objected in the brief that the description of the property in these deeds was too vague and indefinite to pass title; but we think the description, if not certain in itself, was capable of being made certain by parol proof, and was therefore sufficient. Homan v. Stewart, 103 Ala. 644, 16 South. 35, and authorities there cited. Moreover, as affecting the rights of complainants to the relief prayed by them, it may be noted that the deed to Mrs. Dinkins, under which they claim, had the same defect, if defect it was. Nor can there be any doubt that Holly paid the substantial price for the property which he agreed to pay. In the presence of these facts the burden rested on complainants to prove that Holly, at the time of his payments, had notice, actual or constructive, of the equity now asserted by them. Barton v. Barton, 75 Ala. 400.

In the original bill, as we have already indicated, it is charged that Dinkins and Holly conspired to defraud complainants of their inheritance. Whatever may be said of the conduct of Dinkins in the premises, we find in the record no evidence that Holly was a party to any conspiracy. The truth of a charge of that character cannot be assumed; it must be proved. Nor does the evidence, to our mind, afford any satisfactory warrant for holding that Holly had actual notice of complainants' equity. He seems to have had great faith in Dinkins—as a boy, had been his pupil—and no doubt accepted whatever Dinkins said with implicit confidence. His conduct does not indicate bad faith. He paid his money, he went into possession of the property as his homestead, he patiently improved it through a course of years. It signifies little to the contrary that years afterwards, when he learned that there were facts on which complainants might predicate a claim, he joined Dinkins in an effort to procure from them a quitclaim. Nor had he constructive notice by virtue of the recording statute, for the deed from Mrs. Dickson to Mrs. Dinkins was never recorded until he had paid the purchase price, including the mortgage to Brewer, at which time he first learned of the existence of the deed, and then, ignorant of its effect upon his title, himself had it put upon the record—nearly 15 years after his purchase from Dinkins.

Holly was therefore in fact a bona fide purchaser for value, and it only remains to inquire whether the evidence suffices to sustain the conclusion, reached by the chancellor, that notice of complainants' prior equity should be imputed to him on the principle that has been formulated by the authorities as follows: Whenever a purchaser has such information as would put a prudent man on inquiry, and inquiry would lead to knowledge of an adverse claim, it is his own folly if he does not act on the information and make inquiry. Taylor v. A. & M. Association, 68 Ala. 229. A legal presumption arises that he possesses all the knowledge which he could have acquired by such inquiry. 2 Pom. Eq. Jur. § 615. Appellees cite Pickett v. Pope, 74 Ala. 122, and a line of like cases, which, so far as they have any possible relevancy to the case under consideration, hold that a life tenant cannot affect the rights of remaindermen by undertaking to convey the entire fee. In the absence of the deed from Mrs. Dickson to Dinkins, that principle would conclude this case against Holly, for in that case Dinkins could only have exercised or conveyed the right of a tenant for life. But the deed last referred to placed Dinkins in the attitude of an owner of the entire fee, and the real question at issue is one of constructive notice, as we have stated it above.

[6, 7] Appellees' real reliance seems to be placed upon the rule which is thus stated in McCarthy v. Nicrosi, 72 Ala. 332, 47 Am. Rep. 418: The open, notorious, and exclusive possession of real estate by a vendee holding under an unrecorded deed, and claiming the land as his own, is constructive notice of the vendee's title, whether it be legal or equitable in its nature. Mr. Pomeroy makes a statement of the rule, of broader use and application, in this language: Whenever a party, dealing as purchaser or incumbrancer with respect to a parcel of land, is informed or knows, or is in a condition which prevents him from denying that he knows, that the premises are in the possession of a third person, other than the one with whom he is dealing as owner, he is thereby put upon an inquiry, and is charged with constructive notice of all the facts concerning the occupant's right, title, and interest which he might have ascertained by means of a due inquiry. 2 Pom. Eq. Jur. § 615. But, in view of the brief for the remaindermen, it needs to be further stated that possession, to put a purchaser upon inquiry, and operate as constructive notice, must exist at the time of the transaction by which his rights and interests are created. A possession that has ended before, or commenced after, the sale, does not affect the purchaser with notice. Scotch Lumber Co. v. Sage, 132 Ala. 598, 32 South. 607, 90 Am. St. Rep. 932; 2 Pom. Eq. Jur. § 622. At the time of Holly's purchase Dinkins, by his tenant, was in possession under a complete chain of paper title, claiming the right to alienate the fee, and the public record showed nothing to the contrary. In the circumstances as we have found them—that is, that Holly was in fact a bona fide purchaser for value—the transaction between him and Dinkins amounted necessarily to a represen-

tation on the part of Dinkins that he was in possession in his own right, so that Holly stood in the position of one who had made due inquiry of Dinkins at least, and had been assured that he held in his own right. Walker v. Neil, 117 Ga. 733, 45 S. E. 387. He was bound to know what he might have learned from Whetstone, for Whetstone was in possession actually; but inquiry of him could only have elicited the information that he held as the tenant of Dinkins. Of whom else should he have inquired? The rule of the authorities, which is the rule of diligence enjoined by common prudence, did not require him to go further. Complainants, the elder being then only five years of age, had gone to live with an aunt; but, even though they had still been on the place with their father, any rule that would have prescribed an inquiry as to them, except through the father, would be impolitic and unreasonable. Relevant in this connection is the observation of this court in Munn v. Achey, 110 Ala. 628, 18 South. 299, where it is said that the courts in discussing possession as constructive notice, lay quite as much stress upon the fact that the vendor is out as that the claimant of the equity or unrecorded legal title is in possession.

[8, 9] The chancellor appears to have grounded his conclusion that appellant, Holly, was chargeable with notice of complainants' equity upon the single fact that he witnessed the deed from Mrs. Dickson to Dinkins. He says that this should have excited inquiry. Without assuming in any respect to amend the chancellor's opinion, we suppose he intended, as appellees seem to have argued, that the fact that Dinkins had to go to Mrs. Dickson for his title, together with the fact that Mrs. Dinkins had been in possession, as appellant knew, should have put him on notice of her equity and so of appellees'. But we can find in these facts no sufficient basis for the decree against appellant. The alleged possession of Mrs. Dinkins consisted in the fact that she lived upon the place with her husband and children. This state of things—assuming for the moment that appellant, at the time of his purchase, was affected by his previous knowledge—was not apparently inconsistent with the ownership of Dinkins, and appellant, in subsequently dealing with the title, was not bound to assume that Mrs. Dinkins had had a title not shown by the records. Langley v. Pulliam, 162 Ala. 142, 50 South. 365; Autauga Banking Co. v. Chambliss, 75 South. 463.[1] The record title was in Mrs. Dickson, and Mrs. Dinkins and her children were affected by the recording statute as if they had been in all respects sui juris. Dinkins was in possession by his tenant, claiming to own the property. The rule, as we have found it stated, did not put upon appellant the burden of inquiring of Mrs. Dickson as to the possibility of an equity outstanding in third persons—as to that he stood in the same relation to her as to Dinkins—nor upon the facts in evidence was there any reason, in the nature of things, why he should have suspected any wrong in the transaction by which Dinkins acquired title from Mrs. Dickson.

The conclusion is that the decree against appellant Holly's title was error; the decree on his cross-bill, subrogating him to Brewer's mortgage, was useless. The decree will be reversed on Holly's appeal, and a decree will be here rendered dismissing the original and cross bills, appellees in the original appeal to be taxed with the costs accrued in this court and in the court below. The cross-appeal will be dismissed, at the cost of cross-appellants.

Reversed and rendered on Holly's appeal; cross-appeal dismissed.

ANDERSON, C. J., and McCLELLAN and GARDNER, JJ., concur.