52 So.2d 376

**LIGHTSEY v. STONE et ux.**

**I Div. 384.**

Supreme Court of Alabama.

May 10, 1951.

Johnston, McCall & Johnston, Mobile, for appellees.

Outlaw, Seale & Kilborn, Mobile, for appellant.

LAWSON, Justice.

This proceeding was instituted in the circuit court of Mobile County, in equity, by Edward S. Stone and wife, Laura M. Stone, against Leon E. Lightsey to establish and define a disputed boundary line between adjoining city property. Incidental to this relief, the bill prayed for an injunction restraining Lightsey from trespassing and for damages resulting from the removal of shrubbery and for general relief.

The appeal is by the respondent, Lightsey, from a decree fixing the boundary line as claimed by the Stones, ordering Lightsey to remove the fence he had con-structed, and enjoining him from trespassing. The trial court did not award damages for the removal of the shrubbery, finding that any damages suffered were negligible.

The real question in the case is whether the complainants or the respondent is entitled to the possession of a strip of land off the east side of Lot 20 of Alexander Heights addition to the City of Mobile, which strip is approximately thirteen feet wide and 150 feet long.

Lot 20 fronts on the north side of Woodruff Street, formerly called A Street, which street runs east and west. Lot 20 was owned by Lewis Cole and his wife, Etta Cole, each of whom owned an undivided one-half interest. Etta Cole died intestate in 1947 and was survived by her husband and two daughters, Mrs. Lanelle Hathorn and Mrs. Lavern Ford.

On May 1, 1948, Lewis Cole, his two daughters and their husbands, executed a deed conveying Lot 20 to Leon E. Lightsey, the respondent below. This deed purports to convey the fee simple title to all of Lot 20 and contains the following statement: "The grantors herein being the surviving husband and only children of Etta Cole, who died intestate in February, 1947." At the time this deed was executed, there was nothing on record to indicate that the grantors therein could not convey a fee simple title to all of Lot 20. As before indicated, Lewis Cole owned an undivided one-half interest. Upon the death of his wife Lewis Cole, by virtue of the provisions of § 12, Title 16, Code 1940, became vested with a life estate in the other undivided one-half interest, with the remainder or reversion in fee in his daughters.

Thus, it would appear that the respondent, Lightsey, would be entitled to the possession of all of Lot 20 which, as before shown, includes the strip off the east side thereof which is the subject of this controversy.

But the complainants claim that Lightsey was not a bona fide purchaser and that by virtue of events hereafter related, complainants and not Lightsey were entitled to possession of the said strip of land.

Lot 19 of Alexander Heights addition to the City of Mobile is situate immediately east of Lot 20 and is located at the northwest corner of the intersection of Woodruff Street and Florida Street. It has a frontage of fifty-two feet on Woodruff Street. Lot 19 was owned by Mrs. Lanell Hathorn and her husband. As before shown, Mrs. Lanell Hathorn is the daughter of Lewis Cole. On March 6, 1948, Mrs. Lanell Hathorn and husband executed a deed wherein they conveyed Lot 19 to Wiley D. Humphrey. A few days thereafter, on March 9, 1948, Lewis Cole and Wiley D. Humphrey entered into the following written contract:

"State of Alabama ⎱
County of Mobile ⎰

"This Agreement between Louis Cole, a widower, and Wiley D. Humphrey, Witnesseth:—

"That in consideration of the payment by the said Wiley D. Humphrey to the said Louis Cole of One and no/100 ($1.00) Dollar and for the purpose hereinafter set out, the said Louis Cole agrees as follows:—

"That he will convey to the said Wiley D. Humphrey without any other consideration, a strip of land off the East edge of Lot Twenty (20) of Alexander Heights, which the said Louis Cole owns, wide enough to make when added to Lot Nineteen (19) of said Alexander Heights, a frontage on A Street of sixty-five (65) feet with equal width throughout the depth of said lot.

"This agreement will be carried out as soon as the said Wiley D. Humphrey can have Lot Nineteen (19) surveyed and determine the width of said strip to be conveyed by the said Louis Cole.

"This agreement is made to consumate the purchase by the said Wiley D. Humphrey, from the daughter of the said Louis Cole, namely, Mrs. Lanell Hathorn, who has agreed and contracted to convey to the said Wiley D. Humphrey said Lot Nineteen (19) of Alexander Heights, the same to have a width of sixty-five (65) feet.

"In Witness Whereof, we have hereto set out hands in duplicate this 9 day of March, 1948.

> "Lewis Cole                    (Seal)
> _____
> Louis Cole
> Wiley D. Humphrey    (Seal)
> _____
> Wiley D. Humphrey

"Witness as to Signature
of Wiley D. Humphrey
> Jere Austill
> _____

"State of Alabama ⎱
County of Mobile ⎰

"I, Laura Stone, a Notary Public in and for said State and County, do hereby certify that Louis Cole, a widower, whose name is signed to the foregoing agreement, and who is known to me, acknowledged before me on this day, that, being informed of the contents of said agreement, he executed the same voluntarily on the day the same bears date.

"Given under my hand and official seal this 9th day of March, 1948.

> "Laura Stone                    (Seal)
> _____
> Notary Public, Mobile County, Alabama."

This contract was not placed on record until July 15, 1948, after Lightsey had secured his deed to Lot 20 and after he and his family began occupancy of the dwelling located on said lot.

On March 19, 1948, Edward S. Stone and wife, Laura M. Stone, complainants below, purchased Lot 19 from Wiley D. Humphrey. This purchase was under a written contract of sale, which made no mention of the contract between Humphrey and Cole as to Lot 20. It is contended by the Stones, and the evidence supports their contention, that at the time Humphrey conveyed Lot 19 to the Stones, and as a part of that transaction, he orally transferred to the Stones his interest in Lot 20 under his contract with Cole. The evidence was sufficient to support a finding that Cole knew of this transfer.

It is undisputed that on the day of the execution of the conveyance of Lot 19 by Humphrey to the Stones, they went into possession of that lot. The Stones also contended that on the same day, under their oral contract with Humphrey, they

went into possession of the east thirteen feet of Lot 20, the strip of land here involved, although no survey had been made as provided by the written contract between Humphrey and Cole and no conveyance executed by Cole.

■ As before shown, the contract between Cole and Humphrey was in writing. This contract was sufficient under the statute of frauds. Dobson v. Deason, 248 Ala. 496, 28 So.2d 418; Cotton v. Cotton, 75 Ala. 345; Wilkins v. Hardaway, 173 Ala. 57, 55 So. 817; Alabama Central R. Co. v. Long, 158 Ala. 301, 48 So. 363.

■ By virtue of this contract with Cole, Humphrey acquired an equitable interest in the land. Bay Minette Land Co. v. Stapleton, 224 Ala. 175, 139 So. 342; J. A. Owens & Co. v. Blanks, 225 Ala. 566, 144 So. 35; Boozer v. Blake, 245 Ala. 389, 17 So.2d 152; Lynch v. Partin, 250 Ala. 241, 34 So.2d 2.

■ At the time Cole entered into the contract with Humphrey, he owned an undivided one-half interest in Lot 20 and had the use of the entire lot during his life, as the surviving husband of Etta Cole, who owned the other undivided one-half interest and who, as before shown, died intestate. § 12, Title 16, Code 1940. Hence Cole could convey the fee simple title to his one-half undivided interest and a life estate in the other undivided one-half interest, thus giving to his grantee the right of possession during the life of Lewis Cole. Murphy v. Leatherwood, 221 Ala. 61, 127 So. 843. Though the contract between Cole and Humphrey purported to relate to the entire fee, it could only convey Cole's life estate as to the one-half undivided interest formerly owned by his wife, Etta Cole. Murphy v. Leatherwood, supra.

Since the statute of frauds has no application to the written contract of sale between Cole and Humphrey, the cases of Smith v. Thomas, 224 Ala. 41, 138 So. 542, and Barclift v. Peinhardt, 18 Ala.App. 340, 92 So. 208, have no bearing on the question here considered. Those cases are also distinguishable in that the grantors had only an undivided interest in the property, without any right of possession of the entire premises during the life of the grantor, as is the situation in the instant case.

■■ As before indicated, the transfer by Humphrey to the Stones of his rights under the contract with Cole was by parol. Appellant, Lightsey, seeks to invoke the statute of frauds, Code 1940, Tit. 20, § 3, as to this transaction. But he cannot invoke the statute of frauds, for it applies only to persons who are parties to the parol contract and their privies and those whose rights are directly controlled by it. Bradley v. Hall, 239 Ala. 544, 195 So. 883; Hooper v. Reed, 211 Ala. 451, 100 So. 875; Ex parte Banks, 185 Ala. 275, 64 So. 74. Neither Lightsey nor those under whom he claims, Cole and his daughters, are privies to the contract between Humphrey and the Stones.

We think the evidence warrants a finding that complainants had an equitable interest in the strip of land here involved.

But the mere establishment of an equity in the complainants in the strip of land here involved is not sufficient to entitle them to possession. They are not entitled to possession if Lightsey was a bona fide purchaser.

■ In order to constitute one a bona fide purchaser and entitle him to the protection of the rule, as against a prior equity or conveyance, it is essential: " * * * (1) that he is the purchaser of the legal as distinguished from an equitable title; (2) that he purchased the same in good faith; (3) that he parted with value as a consideration therefor by paying money or other thing of value, assuming a liability or incurring an injury; (4) that he had no notice, and knew no fact sufficient to put him on inquiry as to complainant's equity, either at the time of his purchase, or at, or before the time he paid the purchase-money, or otherwise parted with value * * *." Craft v. Russell, 67 Ala. 9, 12, and cases cited. Webb v. Elytou Land Co., 105 Ala. 471, 18 So. 178; Sherrod v. Hollywood Holding Corp., 233 Ala. 557, 173 So. 33; Gibson v. Gibson, 200 Ala. 591, 76 So. 949; Holly v. Dinkins, 202 Ala.

477, 80 So. 861; Larkins v. Howard, 252 Ala. 9, 39 So.2d 224, 7 A.L.R.2d 541.

Since the respondent, Lightsey, proved the execution of a deed to him purporting to convey legal title to all of Lot 20 and further showed payment of a valuable consideration, there was a presumption that the purchase was in good faith and the burden was upon complainants of proceeding by evidence to show that respondent, Lightsey, took with notice of their equity. Stone v. Lacy, 245 Ala. 521, 17 So.2d 865; Lamar v. Lincoln Reserve Life Ins. Co., 222 Ala. 60, 131 So. 223.

Such notice, according to our cases, could be "actual or constructive, or knowledge of facts sufficient to put a reasonable person on inquiry, which, if followed up, would have discovered the title" asserted by complainants. Reeder v. Cox, 218 Ala. 182, 118 So. 338, 341; Stone v. Lacy, supra. See also Hatter v. Quina, 216 Ala. 225, 113 So. 47; Ely v. Pace, 139 Ala. 293, 35 So. 877.

Complainants asserted and sought to show that Lightsey was not a bona fide purchaser in that their possession of the strip of land was sufficient notice of their equity.

It is a familiar principle that a possession which contains all the required elements will operate as notice of the occupant's equitable rights. Munn v. Achey, 110 Ala. 628, 18 So. 299, and cases cited; King v. Paulk, 85 Ala. 186, 4 So. 825; Fowler v. Morrow, 245 Ala. 2, 15 So.2d 629; Alexander v. Fountain, 195 Ala. 3, 70 So. 669; Rankin Mfg. Co. v. Bishop, 137 Ala. 271, 34 So. 991.

But for possession to operate as notice, it must be open, visible, exclusive and unambiguous, not liable to be misconstrued or misunderstood. Wells v. American Mortgage Co., 109 Ala. 430, 20 So. 136; Brunson v. Brooks, 68 Ala. 248; Rankin Mfg. Co. v. Bishop, supra. Consequently, it is uniformly held that where there is no open and visible change of possession, it does not operate as notice. Troy v. Walter Bros., 87 Ala. 233, 6 So. 54; Motley v. Jones, 98 Ala. 443, 13 So. 782;

Scotch Lumber Co. v. Sage, 132 Ala. 598, 32 So. 607; McCullars v. Reaves, 162 Ala. 158, 50 So. 313.

Hence, we have held that where the possession of the vendor and vendee is joint at the time of the sale and conveyance, the rule does not apply. The joint possession does not operate as constructive notice, because there would be no visible act which is calculated to put a stranger on inquiry as to the changed attitude or status of the title, created by the secret conveyance by the vendor to the vendee. McCarthy v. Nicrosi, 72 Ala. 332; Motley v. Jones, supra; Munn v. Achey, supra; Kindred v. New England Mortgage Security Co., 116 Ala. 192, 23 So. 56; O'Neal v. Prestwood, 153 Ala. 443, 45 So. 251; Langley v. Pulliam, 162 Ala. 142, 50 So. 365; Christopher v. Curtis-Attalla Lumber Co., 175 Ala. 484, 57 So. 837; Sloss-Sheffield Steel & Iron Co. v. Taff, 178 Ala. 382, 59 So. 658; Autauga Banking & Trust Co. v. Chambliss, 200 Ala. 87, 75 So. 463; Holly v. Dinkins, supra; Pake v. Lindsey Mill Co., 208 Ala. 569, 94 So. 573. Relevant in this connection is the observation of this court in Munn v. Achey, supra, where it is said that the court, in discussing possession or constructive notice, lays quite as much stress upon the fact that the vendor is out as that the claimants of the equity or unrecorded legal title are in possession.

Much evidence was adduced in the trial court as to the possession of the land both before and after the respondent, Lightsey, secured his deed to Lot 20. But in considering the question as to whether complainants' possession was such as to charge Lightsey with notice of their equity, we are limited to the evidence which relates to the nature of their possession at the time Lightsey secured his deed to Lot 20. Possession, to put a purchaser upon inquiry and operate as constructive notice, must exist at the time of the transaction by which his rights and interests are created. A possession that has ended before, or commenced after, the sale does not charge the purchaser with notice. Holly

v. Dinkins, supra; O'Neal v. Prestwood, supra; Scotch Lumber Co. v. Sage, supra.

However, the evidence as it relates to the manner in which Lots 19 and 20 were occupied prior to the time the complainants secured their conveyance and went into possession of Lot 19 does have some bearing on complainants' contention that they were in such possession of the strip of land here involved as to charge Lightsey with notice of their equity.

In this connection the evidence may be summarized as follows: Mr. and Mrs. Hathorn occupied the dwelling on Lot 19. Mrs. Hathorn's father, Lewis Cole, her brother-in-law and sister lived in the house on Lot 20. There was no fence, hedgerow or monument of any kind marking the western boundary of Lot 19 and the eastern boundary of Lot 20. There was a fence running east and west between the two houses, which is called the "cross-fence." This fence is from thirty to thirty-five feet north of Woodruff Street. Shrubbery was planted along this fence. A few feet west of the boundary line between Lots 19 and 20, and hence on the disputed strip, was a row of shrubbery which extended from Woodruff Street to a point approximately five feet north of the "cross-fence." The back yards of the two lots were not separated in any way. Some fig trees were growing on that portion of the disputed strip north of the cross-fence; in other words, in the back yard of Lot 20. Mr. Hathorn, the occupant of the house on Lot 19 and the son-in-law of Lewis Cole, always parked his car in what is termed the driveway on Lot 20, west of the row of shrubbery referred to above. This so-called driveway is on the disputed strip. The car could not be driven into Lot 20 for more than a distance of twenty or twenty-five feet, for there was an azalea bush located approximately ten feet south of the "cross-fence." It appears that Hathorn parked his car in the "driveway" with consent of the occupants of Lot 20 and without any claim of right.

Such was the condition of the premises and the use to which they were put at the time complainants moved into the house on Lot 19 on March 19, 1948. They moved in on the same day the Hathorns moved out. Lewis Cole, his daughter and son-in-law, Mr. and Mrs. Ford, continued to reside in the house on Lot 20 and were residing therein on May 1, 1948, when the respondent, Lightsey, secured his deed to Lot. 20.

Between March 19, 1948, the day on which complainants moved into the house on Lot 19, and May 1, 1948, the day on which the deed to Lot 20 was executed to Lightsey, no visible change was made as to the boundaries of the property claimed by complainants and that of Cole and his daughters. No boundary fence was erected; the shrubbery was not moved; the cross-fence was not changed.

Mr. Stone did park his car in the so-called driveway on the eastern side of Lot 20 and the trial court could have found from the evidence that the Stones attended to the shrubbery on the strip of land here involved and cut the grass thereon. It also appears that they picked some figs from the trees in the back yard. Yet on the other hand, it appears from one of complainants' own witnesses that after the Stones moved in, Cole cut down the largest of the fig trees. This is the extent to which the evidence bears on the complainants' claim that they were in such possession of the strip of land as to deprive Lightsey of the status of a bona fide purchaser for value without notice of their equitable claim.

We do not think this evidence is sufficient to deprive Lightsey of being a bona fide purchaser. It falls far short of showing that complainants had the exclusive possession of the strip of land. Cole, who had the right to the use of all of Lot 20 during his life, was still living in the house on that lot. The most that can be said of the evidence is that it shows a joint possession between complainants and Cole which, as before shown, is insufficient because there is no visible act which is calculated to put a stranger on inquiry as to the changed attitude or status of the title. McCarthy v. Nicrosi, supra, and other cases cited above.

We hold, therefore, that the decree of the trial court cannot be sustained on the theory that the possession of the strip of land by complainants was sufficient to operate as notice of their equitable rights.

But complainants also contended and brought forth evidence tending to show that Lightsey had actual knowledge of the contract between Cole and Humphrey and of complainants' rights thereunder.

Stone testified that Lightsey had admitted to him that Cole had so advised him at the time he purchased the lot and that Lightsey said to Stone that "he would have bought Lot Twenty if the remainder of it wasn't but forty feet." Lightsey emphatically denied making any such statement.

On this issue of actual knowledge, we think the evidence as it relates to the conduct of the Stones and of Lightsey, after he moved into the house on Lot 20, is important.

The evidence is in sharp conflict as to who attended to the grass and shrubbery on the disputed strip and as to whether or not the complainants gathered the figs from the trees growing thereon.

But it is undisputed that after Lightsey moved in, Stone continued to park his automobile in the so-called driveway which is on Lot 20 until about Thanksgiving Day, 1948, when, in the absence of complainants, Lightsey built a fence approximately on the boundary line between the lots as platted.

Lightsey never made any inquiry of Stone as to why he was parking his car in the driveway or discussed their boundary line until the first part of August, 1948, when a survey was made. During all this time and until the time Lightsey built the fence, he had parked his automobile on the west side of his house on an adjoining lot owned by one Sheffield. When Sheffield in effect forbade such use of his lot and constructed a fence between his lot and that of Lightsey, he aided Lightsey in constructing the fence between Lot .20 on the west and Lot 19 on the east.

The fact that Lightsey permitted Stone to park his car on Lot 20 without even so much as mentioning the matter to Stone tends to support Stone's testimony to the effect that Lightsey had actual knowledge of Stone's right of possession.

Lightsey sought to explain his conduct in this respect and the trial court permitted Lightsey and his wife to testify that Cole, at the time they secured their deed to Lot 20, asked them to permit Stone to continue to park his car in the driveway until Stone could build a gate into the rear of Lot 19 from Florida Street.

Cole did not testify in the case. It appears that he was out of the state. After Lightsey and his wife had testified that Cole had asked them to permit Stone to use the driveway for a while, the trial court, over the strenuous objection of counsel for Lightsey, permitted complainants to introduce in evidence an undated written instrument, which reads:

"This is to certify that I, Louis Cole, sold Wiley Humphrey a piece of land of lot 20 in Alexander Heights, when added to lot 19 made 65 ft frontage on Woodruff St. and that I informed Mr. Lightsey of my agreement with Mr. Humphrey.

"/S/ Lewis Cole

"Witnesses:
E. S. Stone
Laura M. Stone"

It appears from statements made by the trial court at the time the writing was admitted in evidence, and from the decree, that the court's ruling was on the theory that the writing was admissible for the purpose of rebutting the testimony of Mr. and Mrs. Lightsey to the effect that Cole had asked them to permit Stone to park his car in the driveway.

Complainants below, appellees here, seek to sustain the action of the trial court in admitting this writing in evidence by the invocation of the principle that incompetent or illegal evidence may be admitted without error to rebut evidence of like character and by the assertion that the evidence given by Lightsey and his wife to the effect that they were asked by Cole to permit Stone to use the driveway until he could gain entrance to Lot 19 from Florida Street was incompetent and illegal. The principle which complainants

seek to invoke is, of course, well established. Bank of Phoenix City v. Taylor, 196 Ala. 665, 72 So. 264, and cases cited.

But we do not think that principle has application, for we cannot agree that the evidence of Lightsey and wife as to the statement made to them by Cole was incompetent or illegal. It seems clear to us that the statement of Cole was explanatory of his possession of Lot 20 during the time he lived in the house thereon and after complainants had entered upon the occupancy of the house on Lot 19, during which time Stone parked his car on a part of the disputed strip of land off the east side of Lot 20, "A party in possession of land may make declarations explanatory of his possession, and either claim or disclaim ownership, no matter who may be parties to the suit. Possession being the principal fact, such declarations are admissible as part of the res gestae of the possession itself and are admissible when made by a party on the land, or in possession thereof, whether actually on the land or not at the time of making same. Owen v. Moxon, 167 Ala. 615, 52 So. 527; Payne v. Crawford, 102 Ala. [387] 398, 14 So. 854." Shelton v. Stapler, 219 Ala. 15, 16, 121 So. 34, 35.

As before pointed out, the trial court indicated that it did not consider this writing as original or primary evidence of the fact that Cole did tell Lightsey of his contract with Humphrey, but limited the effect of the writing to contradiction or impeachment of the witnesses Mr. and Mrs. Lightsey. In other words, the writing was considered as if Cole had been present in court and had testified that he made no such request as testified by the Lightseys. Of course, the Lightseys were subject to being contradicted, but we do not think it could be done in this manner. Vendetti v. United States, 9 Cir., 45 F.2d 543. We know of no exception to the hearsay rule that would make this unsworn ex parte statement admissible in evidence even for the purpose to which it was limited. If Cole had been produced as a witness or if he had given evidence by deposition, the respondent would have had the opportunity to cross-examine him. We hold, therefore, that the writing was erroneously admitted in evidence. State ex rel. Bailess, Solicitor, v. Guardian Realty Co., 237 Ala. 201, 186 So. 168.

Complainants below, appellees here, argue that even though it be held that the writing was erroneously admitted in evidence, such action of the trial court does not require a reversal of the decree.

We have adopted for equity the prevailing rule at law that "the admission of illegal evidence over objection requires a reversal unless the remaining evidence is without conflict and sufficient to support the judgment." Pfingstl v. Solomon, 240 Ala. 58, 64, 197 So. 12, 16. As to this rule, it is sufficient to say that it can have no application here, for the remaining evidence is decidedly in conflict.

We also apply Supreme Court Rule 45, Code 1940, Tit. 7 Appendix, to equity cases and will not reverse a decree unless in the opinion of the court, after an examination of the entire cause, it should appear that the error complained of has probably injuriously affected a substantial right. Roubicek v. Roubicek, 246 Ala. 442, 21 So.2d 244.

But we think it appears from this record that the admission in evidence of Cole's ex parte statement has probably affected a substantial right. As before pointed out, the decree could only be sustained on the theory that Lightsey had actual knowledge of complainants' equitable rights. The evidence as to this issue was in sharp conflict and the ultimate question for decision hinged in a large measure on whether Lightsey and his wife or Stone was telling the truth. It affirmatively appears that the trial court considered this ex parte written statement as bearing on the credibility of the testimony of Lightsey and his wife. We feel constrained, therefore, to reverse the decree appealed from.

Reversed and remanded.

LIVINGSTON, C. J., and FOSTER and STAKELY, JJ., concur.