232 So.2d 666

Tom BLOWERS, d/b/a National
Car Rentals

v.

**FIRST NATIONAL BANK OF
HUNTSVILLE.**

**8 Div. 20.**

Court of Civil Appeals of Alabama.

March 4, 1970.

———◆———

Culver & Miller, Huntsville, for appellant.

Cloud, Berry, Ables, Blanton & Tatum, Huntsville, for appellee.

**BRADLEY, Judge.**

This is an appeal from a judgment rendered by the Circuit Court of Madison County, Alabama, sitting without a jury, in four cases of detinue which had been consolidated for the trial.

There were four complaints sounding in detinue seeking recovery of three autos and one truck from the First National Bank of Huntsville, Alabama, accompanied by a bond and affidavit.

To each of the complaints a plea in short was filed, and then later a replevin bond was filed.

Although there had been a consolidation of the cases for trial, the court rendered separate judgments in each case for the defendant.

The plaintiff then filed a motion for new trial, consolidating the four cases into the one motion with common grounds. The motion was overruled.

The plaintiff then appealed the judgments in all four cases to the Supreme Court. The case was subsequently transferred to this court.

There were thirteen assignments of error, four of which were not argued in brief, and are thereby waived. Supreme Court Rule 9.

■ ▪ The main thrust of the remaining assignments of error is directed toward the applicability or non-applicability of Title 7A, Section 2–201 of the Uniform Commercial Code. The trial court obviously decided that Section 2–201, supra, was not applicable to the situation here presented. Now, we must decide if it was correct.

The facts in this case show that the appellant, National Car Rentals, a motor vehicle leasing operation, allowed Doyle Brady Auto Sales, a used car lot operation, to take physical possession of three automobiles and one truck, which later became the basis of this case. The manner in which possession was obtained was in dispute.

The facts further show that during the time Doyle Brady had possession of these four motor vehicles, he executed and delivered to the First National Bank of Huntsville, Alabama, chattel mortgages on each of them. At the time the chattel mortgages were delivered on the four vehicles in question, the First National Bank and Doyle Brady had in effect a floor plan financing arrangement covering all after-acquired property, and the procedure was that when Doyle Brady delivered chattel mortgages on motor vehicles to the First National Bank, it would in turn make the agreed-upon deposits to his account. The First National Bank had filed a copy of the above-mentioned financing agreement with the Secretary of State prior to the transactions in question.

In Octoboer of 1967 the First National Bank foreclosed on the chattel mortgages it held from Doyle Brady Auto Sales, and took possession of his inventory of motor vehicles, including the four motor vehicles in question. The evidence as to how Doyle Brady Auto Sales obtained possession on the four vehicles in question was in sharp conflict.

Mr. Tatum, manager of National Car Rentals, testified that the four motor vehicles were placed in Doyle Brady's possession for the purpose of repairs and clean-up. Doyle Brady testified that the four motor vehicles were sold to him with the understanding that he would have thirty days in which to pay for them. Tendencies of the evidence also reflect that the history of dealings between National Car Rentals and Doyle Brady Auto Sales went something like this:

Brady testified that he had purchased outright, some forty to fifty motor vehicles from the appellant in the past. He also testified that he had sold for the appellant, ten to fifteen motor vehicles.

Mr. Tatum on the other hand testified that Brady had sold some twenty-five to fifty motor vehicles for National Car Rentals in the capacity of a commission agent.

The testimony was to the effect that during these transactions there had never been any written agreement or memoranda signed by either of the parties, either when the sales were outright sales to Doyle Brady, or when Doyle Brady was selling the motor vehicles for National Car Rentals.

Brady testified that when there had been an outright purchase of motor vehicles from National Car Rentals in the past, he had paid for them either in cash or by check. Mr. Tatum testified that when the automobiles were on consignment to Brady, that National Car Rentals still had title and right to possession of them, and if Doyle Brady obtained a purchaser for them, he would pay National Car Rentals for the motor vehicles after they were sold.

Mr. Tatum also stated that in a few instances, title to the motor vehicles would be given directly to the ultimate purchaser by National Car Rentals. In some instances National Car Rentals would turn over the motor vehicle and the keys thereto to Mr. Brady. There were also times when the bill of sale would be made out to the ultimate purchaser, but given to Mr. Brady to be handed to the purchaser.

Furthermore, the tag receipts to the motor vehicles were usually transferred directly to the purchaser, although in a few instances they were given to Mr. Brady.

There was no evidence of the filing of a written statement with the Secretary of State by either National Car Rentals or Doyle Brady Auto Sales which would have shown that National Car Rentals was consigning autos to Brady for sale.

The evidence reflected that a 1966 Ford was on Brady's used car lot for some six to eight weeks for clean-up and minor repairs, prior to the time that it was taken by the appellee; a 1962 Ford truck was on Brady's lot for approximately eight weeks for minor repairs; a 1965 Falcon station wagon was on Brady's lot for some four to eight weeks for clean-up and minor repairs, although it was shown that during this period of time the car was reclaimed by National Car Rentals and kept for approximately one to two weeks before it was returned to Doyle Brady Auto Sales; a 1966 Chevrolet Impala was on Brady's lot for a period of time somewhere in the neighborhood of three to eight weeks for extensive repairs. The evidence also reveals that this motor vehicle was not repaired.

Mr. Tatum and Mr. Brady testified that the normal clean-up time for vehicles given to Brady for that purpose would be two to three days, and minor repairs would take, at the most, two days. The evidence revealed that the value of each of the four motor vehicles in question was in excess of $500.00.

Appellant, in his fifth assignment of error, contends that the trial court erred in refusing to exclude "all of Brady's testimony pertaining to any transactions regarding the four automobiles on the basis of the statutes of frauds provisions of Title 7A, Section 2–201 and Section 2–202." (Title 7A, Sec. 2–201 and Sec. 2–202, Code of Alabama 1940, as Recompiled 1958, being Act No. 549, General Acts of Alabama 1965, and known as the Uniform Commercial Code.)

Title 7A, Section 2–201, provides:

"(1) Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

"(2) Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its contents is given within ten days after it is received.

"(3) A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable.

"(a) if the goods are to be specially manufactured for the buyer and are not suitable for sale to others in the ordinary course of the seller's business and the seller, before notice of repudiation is received and under circumstances which reasonably indicate that the goods are for the buyer, has made either a substantial beginning of their manufacture of commitments for their procurement; or

"(b) if the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract for sale was made, but the contract is not enforceable under this provision beyond the quantity of goods admitted; or

"(c) with respect to goods for which payment has been made and accepted or which have been received and accepted."

Title 7A, Section 2–202, provides:

"Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented

"(a) by course of dealing or usage of trade (section 1—205) or by course of performance (section 2—208) ; and

"(b) by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement."

Section 2–202, supra, is not applicable to this case for the reason that no evidence was introduced at the trial showing written memoranda between National Car Rentals and Doyle Brady Auto Sales concerning their arrangement for the disposition of the motor vehicles in question. Neither can it be said that Brady was trying to clarify a written memorandum by his testimony—for there was no such writing.

Therefore, we will concern ourselves only with whether Section 2–201, supra, would be applicable here.

Appellant's motion to exclude was an attempt to have the trial court disregard the testimony of Doyle Brady relating to any transactions concerning the four motor vehicles in question because there was no evidence of any written memoranda to indicate a sale of said vehicles.

Appellee countered by saying that the statute of frauds should have been raised by plea. However, since this proceeding was not against one of the parties to the business arrangement, we can perceive of no other practical way the appellant could have raised the issue. However, this question is not decisive of the case, and we will, therefore, pretermit any further discussion of it.

Appellee also contended that it was a stranger to the transactions between appellant and Doyle Brady Auto Sales, and, therefore, appellant could not use the statute of frauds against one not a party to the agreement, and, in support of this argument, appellee cited the case of Lightsey v. Stone, 255 Ala. 541, 52 So.2d 376

Then, in oral argument before this court, appellant attempted to distinguish Lightsey v. Stone, supra, from the case at bar on the ground that the cited case involved a real estate transaction as opposed to a personal property transaction. But, in Haden v. Rhodes & McLeod Co., 271 Ala. 344, 123 So.2d 916, a case dealing with a truck rental and mileage taxes, the Supreme Court, speaking through Mr. Justice Lawson as it did in Lightsey v. Stone, supra, said:

" * * * the appellant cannot invoke the statute of frauds, for it applies only to persons who are parties to the parol contract and their privies and those whose rights are controlled by it." Lightsey v. Stone, 255 Ala. 541, 52 So.2d 376."

Having thus seen no distinction made as between real and personal property transactions so far as the statute of frauds is concerned (Title 20, Section 3, Code of Alabama 1940, as Recompiled 1958), the next question to be answered is whether or not appellee's rights are to be controlled by this apparent contract between appellant and Doyle Brady Auto Sales? We think the answer is in the negative.

Should we say that *Lightsey* and *Haden,* supra, were apt authority for the proposition advocated by appellant, we do not think that appellee's rights would be controlled by the oral contract as between appellant and Doyle Brady Auto Sales, because under Sections 2–201(3) (c) and 2–

606(1) (c) and 2–606(2) of the Uniform Commercial Code, the retention of the vehicles by Brady, and the length of said retention, constituted an acceptance which would remove the case at bar from the purview of the statute of frauds (Section 2–201); thus, via the contract, Brady would have gained rights in the vehicles that would have given rise to a valid security interest in favor of appellee.

We are therefore constrained to hold that appellant cannot raise the statute of frauds against one not a party to the contract; we do, however, base this conclusion solely on the language in Section 2–201, supra, particularly that portion which provides:

"* * * is not enforceable by way of action or defense * * *."

Furthermore, we are convinced that appellee was not trying to enforce the oral contract between appellant and Doyle Brady Auto Sales. We would also suggest that Comment 4 to Section 2–201, supra, supports the conclusion reached by this court. Comment 4 provides:

"Failure to satisfy the requirements of this section does not render the contract void' for all purposes, but merely prevents it from being judicially enforced in favor of a party to the contract. For example, a buyer who takes possession of goods as provided in an oral contract which the seller has not meanwhile repudiated, is not a trespasser. Nor would the Statute of Frauds provisions of this section be a defense to a third person who wrongfully induces a party to refuse to perform an oral contract, even though the injured party cannot maintain an action for damages against the party so refusing to perform."

We, therefore, conclude that the testimony of Doyle Brady relating to the transaction surrounding the four vehicles in question was admissible and not made inadmissible by the statute of frauds as set out in Section 2–201, supra.

The question of whether there was an oral contract was for the trier of fact to determine—he being the one who heard the witnesses and observed their demeanor; and after having done so, he obviously concluded that an oral contract existed. Moreover, we have not been convinced that his decision was erroneous. Consequently, we do not consider assignment number five to be error.

Assignment of error four relates to the ruling of the trial court refusing to exclude certain testimony of the witness, Doyle Brady, pertaining to the sale of the 1965 Ford Falcon station wagon on the same ground as relied on in assignment of error five, i. e., Title 7A, Sections 2–201 and 2–202, supra.

For the reasons given in the ruling on assignment of error five, we find no error in the trial court's denial of the motion to exclude said testimony.

In his assignment of error seven, appellant contends that the trial court erred when it sustained appellee's objection to a question asked of Doyle Brady as follows:

"I will ask you, sir, on cross examination by me on February 27, 1968, in Mr. Berry's office, if I did not ask you the following question? '* * * and on each specific car while you had a floor plan or credit with the First National Bank, what percentage of the wholesale' value did First National Bank lend to you? In other words, was it at some figure in percentage?' Your answer was, 'I believe it was 90 percent, I am not sure.' "

Appellee's stated ground was the immateriality of the question.

We agree with the ruling of the trial court.

Inasmuch as we are deciding that the trial court was correct in its judgment in these four cases, the wholesale value of the

vehicles was immaterial and irrelevant. The only relevant and material question was what amount appellee deposited in Brady's account, for this would show appellee's interest in the vehicles. And, under its creditor's rights, appellee would be entitled to recover from Brady the amount thus deposited to his account for these vehicles. Any prior inconsistent statement by Brady relative to value would be immaterial to the issue.

■ Appellant, in his assignment of error three, suggests that the trial court committed error when it sustained the objection of appellee to the following question of Mr. Tatum:

"You never entered into a written agreement with Mr. Brady at all concerning any one of these four automobiles?"

As pointed out by appellant's counsel on page 111 of the record, the purpose of the testimony to be elicited from the witness was to show a violation of the statute of frauds (Title 7A, Sec. 2–201, supra), as set out in the Uniform Commercial Code.

The following questions had already been propounded to Mr. Tatum and responsive answers obtained:

"Q. I will ask you this: In regard to any one of those three vehicles, that is, with the exception of the truck, did you give him any statement in writing concerning a sales price for that vehicle, or describe the vehicle in any manner?"

"Q. Did you at the time that you took any of the vehicles involved in this case down to Mr. Doyle Brady enter or give him any writing whatsoever containing a description of these vehicles or a price or a figure for them, sir?"

Then on page 130 of the record the following testimony of the witness Doyle Brady is found:

"Q. Now, nothing was in writing, or nothing passed in writing between you and Mr. Tatum or you and Mr. Blowers

regarding these automobiles at the time they were brought down there?

"A. No, sir.

*   *   *   *   *   *

"Q. In other words, nothing ever passed between you and Mr. Tatum or Mr. Blowers?

"A. No, sir."

The ruling of the trial court to the question made the basis of assignment three, if error, was not sufficiently erroneous to cause a reversal of this cause for that the witness Tatum, prior to the question made the basis of the assignment of error, had answered a similar question propounded by appellant's counsel and the court therefore had before it the knowledge which appellant was again trying to bring forth from the same witness. This was nothing more than repetitious questioning in an attempt to elicit cumulative evidence.

To further substantiate our conclusion that no reversible error had been committed so far as assignment three is concerned, we would point out that Doyle Brady confirmed Mr. Tatum's testimony that there had been no written memoranda passed between the two concerning the four vehicles in question.

We find no reversible error in assignment three.

In his assignment of error one, appellant contends that the trial court erred when it overruled an objection to the following question propounded by appellant's counsel to the witness Tatum:

"Most of your cars were sold, you say, wholesale. Let me ask you this: What in your best judgment would be the reasonable wholesale market value of the 1966 Country Sedan Station Wagon as of November, 1967?"

The objection to this question was based on its immateriality and irrelevancy.

We think the objection was correct and that the evidence would not have been ma-

terial and relevant. However, due to our holding in this case, we think that the ruling of the trial court as it related to the question made the basis of assignment one, was error without injury. Supreme Court Rule 45.

■ Appellant, in his assignments of error ten, eleven and twelve, contends that the verdict for the appellee was contrary to the evidence, the law, and the facts, and was palpably wrong and unjust.

We will answer these three assignments together.

The evidence as contained in the record before this court was amply sufficient to warrant the trial judge in finding that an oral contract existed between Doyle Brady Auto Sales, Inc. and National Car Rentals for the possession and disposition of the four vehicles in question, and that the vehicles were on Brady's auto lot for sale, and in line for sale.

Therefore, the trial court could readily conclude that appellee's creditor's rights could and did attach under Title 7A, Section 2–326, Uniform Commercial Code, which is as follows:

"(1) Unless otherwise agreed, if delivered goods may be returned by the buyer even though they conform to the contract, the transaction is

"(a) a 'sale on approval' if the goods are delivered primarily for use, and

"(b) a 'sale or return' if the goods are delivered primarily for resale.

"(2) Except as provided in subsection (3), goods held on approval are not subject to the claims of the buyer's creditors until acceptance; goods held on sale or return are subject to such claims while in the buyer's possession.

"(3) Where goods are delivered to a person for sale and such person maintains a place of business at which he deals in goods of the kind involved, under a name other than the name of the person making delivery, then with respect to claims of creditors of the person conducting the business the goods are deemed to be on sale or return. The provisions of this subsection are applicable even though an agreement purports to reserve title to the person making delivery until payment or resale or uses such words as 'on consignment' or 'on memorandum'. However, this subsection is not applicable if the person making delivery

"(a) complies with an applicable law providing for a consignor's interest or the like to be evidenced by a sign, or

"(b) establishes that the person conducting the business is generally known by his creditors to be substantially engaged in selling the goods of others, or

"(c) complies with the filing provisions of the article on secured transactions (article 9).

"(4) Any 'or return' term of a contract for sale is to be treated as a separate contract for sale within the statute of frauds section of this article (section 2—201) and as contradicting the sale aspect of the contract within the provisions of this article on parol or extrinsic evidence (section 2—202)."

Furthermore, we conclude, in view of the evidence submitted to the trial court, that Section 2–326, supra, was applicable to the situation as presented to the trial court, and that it permitted the establishment of appellee's creditor's rights as being paramount to those of appellant.

Assignment of error thirteen raises the proposition that the trial court erred in overruling the motion for new trial. There were eight grounds of the motion, three of which related to objections to questions propounded to the witness Brady and which were the basis of other assignments of error already covered. The remaining five grounds of the motion were, except for number seven, general grounds without any specificity of error. Ground seven did

specify error in the application of Section 2–326(3) of the Uniform Commercial Code rather than Section 2–201 of said Code.

We have covered each and every ground of the motion for new trial in our analysis of the other assignments of error.

The Supreme Court of Alabama in Allred v. Dobbs, 280 Ala. 159, 190 So.2d 712, held that where the assignment of error raised the question of the denial of the motion for new trial, all of the grounds thereof became separate assignments of error and would necessitate review by the appellate court.

As we pointed out above, all of the grounds of the motion for new trial had been assigned as error and had been reviewed by this court.

Based on our conclusions concerning the other assignments of error, we here decide that the trial court committed no error in overruling the motion for new trial.

There being no reversible error apparent from the record and briefs filed in this case, we affirm the judgments of the trial court.

The motion to dismiss appeal and strike brief of appellant is overruled.

Affirmed.