**In re James Floyd TAYLOR f/d/b/a Lance Sportswear, Debtor.**

**J. William WHITE, Trustee,**

**v.**

**James Floyd TAYLOR, individually and fdba Lance Sportswear; William John Tolley; Jessie Heppinstall Tolley; Real Estate Financing, Inc., a corporation; Metropolitan Life Insurance Co., a corporation and Wayne Smith, Defendants.**

**Bankruptcy No. 83–5027.
Adv. No. 84–0054.**

United States Bankruptcy Court,
N.D. Alabama, W.D.

Aug. 28, 1984.

J. William White, Scottsboro, Ala., trustee.

Walter P. Crownover, Tuscaloosa, Ala., for debtor.

GEORGE S. WRIGHT, Bankruptcy Judge.

## MEMORANDUM OF DECISION

This matter came to trial before this Court on the Trustee's complaint to have an unrecorded transfer of real estate declared null and void pursuant to 11 U.S.C. Sect. 544(a). This case illustrates the often unforseen difficulties which may be encountered in "creative financing" schemes. The issue to be decided is whether the possession of the disputed property by the transferees is sufficient notice to defeat the claim of the Trustee who under 11 U.S.C. Sect. 544(a), has the rights of a hypothetical judicial lien creditor or bona fide purchaser as of the date of the petition. The resolution of this issue ultimately hinges upon whether the parties to the transaction in question intended the warranty deed or the contemporaneously executed lease with a purchase option to be the controlling document.

## FINDINGS OF FACT

Prior to January 22, 1980, defendant Wayne A. Smith was the record owner of a house and lot described as Lot 42 of Northwood 11 in Tuscaloosa County, Alabama. Mr. Smith conveyed this property by warranty deed to debtor-defendant James F. Taylor on January 22, 1980. On the same day, Mr. Taylor executed a real estate mortgage in favor of defendant Real Estate Financing, Inc. This mortgage secured a note for $60,000 at an interest rate

of approximately 10½% and contained a standard "due on sale" clause.[1] Both the warranty deed to James F. Taylor and the mortgage to Real Estate Financing were recorded.[2]

Soon after this transaction was completed, Mr. Taylor decided that he didn't want the Northwood property. He arranged instead to trade the Northwood property to Mr. Smith for a lot and house at Number 4 Academy Drive, Tuscaloosa, Alabama. Seeking to sell the Northwood property, Mr. Smith contacted Mr. and Mrs. Tolley in March of 1980. The Tolleys wanted to buy the Northwood property but could not afford to assume the mortgage since doing so would trigger the "due on sale" clause, and interest rates had risen from 10½% in January, 1980 to nearly 18% in March, 1980.

In order to circumvent the "due on sale" clause no deed from Mr. Taylor conveying the Northwood property back to Mr. Smith was ever executed. Also to avoid triggering the "due on sale" clause and to permit the Tolleys to buy the Northwood property at an interest rate of 10½%, Mr. Smith arranged for Mr. Taylor to execute a warranty deed conveying the Northwood property to the Tolleys; and the parties agreed to not record this deed until the interest

rates had come back down. This deed was dated April 8, 1980; and the parties contemporaneously executed a lease with an option to purchase for a term of three years. The rental agreement was supposed to have been recorded to protect the Tolley's interest in this house until the mortgage could be assumed, but this was never done.

Because the Tolleys were advised in a letter from Mr. Smith to record the rental agreement immediately and warned not to record the deed until the interest rates permitted the mortgage to be assumed, the Trustee argues that the rental agreement with the option to purchase was intended by the parties to be the controlling document. The Trustee contends that the delivery of the deed was a conditional delivery to be effective only upon the actual assumption of the mortgage. Since the Tolleys have not exercised the option in the rental agreement, the Trustee asserts that the Tolleys now have no interest in the Northwood property.

■ This Court, however, is not persuaded by the Trustee's arguments and rejects the contention that the rental agreement was intended by the parties to be the controlling instrument. Viewing the evi-

1. Transfer of the Property; Assumption. If all or any part of the Property or an interest therein is sold or transferred by the Borrower without Lender's prior written consent, excluding (a) the creation of a lien or encumbrance subordinate to this Mortgage, (b) the creation of a purchase money security interest for household appliances, (c) a transfer by devise, descent or by operation of law upon the death of a joint tenant or (d) the grant of any leasehold interest of three years or less not containing an option to purchase. Lender may, at Lender's option, declare all the sums secured by this Mortgage to be immediately due and payable. Lender shall have waived such option to accelerate if, prior to the sale or transfer, Lender and the person to whom the Property is to be sold or transferred reach agreement in writing that the credit of such person is satisfactory to Lender and that the interest payable on the sums secured by this Mortgage shall be at such rate as Lender shall request. If Lender has waived the option to accelerate provided in this paragraph 17, and if Borrower's successor in interest has executed a written assumption agreement accepted in writ-

ing by Lender, Lender shall release Borrower from all obligations under this Mortgage and the Note.

If Lender exercises such option to accelerate, Lender shall mail Borrower notice of acceleration in accordance with paragraph 14 hereof. Such notice shall provide a period of not less than 30 days from the date the notice is mailed within which Borrower may pay the sums declared due. If Borrower fails to pay such sums prior to the expiration of such period, Lender may, without further notice or demand on Borrower, invoke any remedies permitted by paragraph 18 hereof.

2. Mr. Taylor remained the owner of record as of September 19, 1983 when he filed his Chapter 7 petition.

On February 19, 1980 Real Estate Financing, Inc. assigned eighty percent of its right, title and interest in the Taylor mortgage to Metropolitan Life Insurance Co. This assignment was duly recorded. No other documents affecting title to the property were recorded before Mr. Taylor filed his Chapter 7 petition.

dence in its totality, the Court finds that the parties intended the April 8, 1980 transaction to be a sale of the Northwood property and not a lease with a conditional delivery of a warranty deed. The Court, therefore, finds that the parties intended the warranty deed to be the controlling instrument.

The Court's finding is supported by several facts which have been brought out in the pleadings and at trial. In the first place, the Tolleys took possession of the Northwood property on April 12, 1980 and have remained there continuously since then. Under the rental agreement, the Tolleys were obligated to make payments of $630.43 per month. Mr. Smith testified that this amount was exactly equal to the payments under the Taylor mortgage. Except for two or three payments made through Mr. Smith, the Tolleys have made all of their payments directly to Real Estate Financing, Inc.

The Tolleys have at all times since April 8, 1980 considered themselves to be the owners of the Northwood property and have acted in accordance with that belief by making valuable improvements on the property which include clearing the back yard, moving trees and shrubs, and installing ceiling fans and dead-bolt locks. All of these improvements were made without the consent or over the objection of anyone.

Also, when the Tolleys entered into this transaction, they traded to Mr. Smith their $8,000 equity in their previous home. The Court finds this fact very persuasive since it is highly unlikely that one would trade the equity in his home for a lease with an option to buy. Lastly, Mr. Smith testified that he considered the Northwood property to have been sold on April 8, 1980.

Based upon these facts, the parties clearly intended the warranty deed executed on April 8, 1980 conveying the Northwood property to the Tolleys to be the controlling document. The rental agreement was ancillary to the sale and was merely a device intended to circumvent the effects of the "due on sale" clause in the Taylor mortgage. The Court so finds.

## CONCLUSIONS OF LAW

Section 544(a) of the Bankruptcy Code, also known as the "strong arm clause", gives the trustee the rights of and the power to avoid any transfer avoidable by a hypothetical judicial lien creditor or a hypothetical bona fide purchaser of real property of the debtor as of the date of the petition. 11 U.S.C. Sect. 544(a); *see generally 2 Collier Bankruptcy Manual* 544.01 (3rd Ed.1984); 4 *Collier on Bankruptcy* 544.01–.02 (15th Ed.1984). That section provides:

**Section 544 Trustee as lien creditor and as successor to certain creditors and purchasers.**

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of the property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained a judicial lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; and

(3) a bona fide purchaser of real property from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. Section 544(a).

Although Section 544 vests the trustee with the broad powers listed above, the

extent of those rights is determined by substantive state law. *See Matter of Clifford,* 566 F.2d 1023, 1025 (5th Cir.1978) (Construing Section 70(c) of the Bankruptcy Act); *In re Rosenberg Iron & Metal Co.,* 343 F.2d 527, 529 (7th Cir.1965); *Matter of Steele,* 27 B.R. 474, 476 (Bkrtcy.W.D. Wis.1983) (citing 4 *Collier on Bankruptcy* 544.02 (15th Ed.1982)); *In re Sanford,* 8 B.R. 761, 764, 7 B.C.D. 929, 931 (Bkrtcy.N. D.Cal.1981) (state law limits under either Code or Act). The applicable Alabama statute is Section 35–4–90(a) of the Alabama Code which provides:

**Section 35–4–90. Conveyances of real property generally.**

(a) All conveyances of real property, deeds, mortgages, deeds of trust or instruments in the nature of mortgages to secure any debts are inoperative and void as to purchasers for a valuable consideration, mortgages and judgment creditors without notice, unless the same have been recorded before the accrual of the right of such purchasers, mortgagees or judgment creditors.

*Ala. Code* Sect. 35–4–90(a)(1975). Under this section, if a subsequent purchaser for valuable consideration or judgment creditor is without notice of a prior unrecorded conveyance or mortgage, that subsequent purchaser or creditor is given priority over the first party. Since this case concerns a purchaser in possession, of real property under an unrecorded deed, the issue then becomes whether such possession constitutes notice which would defeat the Trustee's assertion of the status of a bona fide purchaser or a judicial lien creditor without notice.[3]

The Alabama Supreme Court has consistently held that possession of land even under an unrecorded deed puts subsequent purchasers and judgment creditors on notice of the possessor's claim or title. *See Gulf Oil Corp. v. Beck,* 293 Ala. 158, 300 So.2d 822 (1974) (notice to creditor); *Alex-*

*ander v. Fountain,* 195 Ala. 3, 70 So. 669 (1916) (notice to purchaser). In the *Alexander* case, the supreme court ruled in favor of the defendant who was in possession of land under an unrecorded deed and against a subsequent purchaser who had brought an action of ejectment. In so holding, the *Alexander* court stated:

From the earliest decisions of this court construing unrecorded conveyances void as to "purchasers without notice," etc., it has been held that actual notice is equivalent to the constructive notice afforded by the registration of the conveyance. The whole object and design of the statute is said to be to give notice of the existence of the conveyance.

It has likewise been repeatedly held that, where one is in possession of the premises, the purchaser of such premises is charged with an implied notice of the nature of his title. It is equally well settled law in this state that whatever is sufficient to put a party on inquiry is enough to charge him with notice. Means of knowledge may be equivalent to knowledge. Whatever is sufficient to put one on his guard and call for inquiry is notice of everything to which the inquiry would lead.

*Alexander,* 195 Ala. at 5, 70 So.2d at 669–70 (Citations omitted).

In *Gulf Oil Corp. v. Beck,* 293 Ala. 158, 300 So.2d 822 (1974) the supreme court held that possession by purchasers under an unrecorded deed was notice to a subsequent judgment creditor which prevented his lien from attaching to that property. The court quoted from *Burt v. Cassety,* 12 Ala. 734 (1848) wherein the Alabama Supreme Court stated:

Actual notice of the execution of the deed is not brought home to the creditor ... but the possession by the vendee, of the land, and the exercise of ownership over it by her, is an implied notice, quite

---

**3.** Note that while the trustee's power is not limited by any knowledge he or any creditor may have, Section 544 does not purport to exempt the trustee from constructive notice. *In re Kelly,* 29 B.R. 708, 710 (Bktcy.D.Mc.1983) The

words "without regard to any knowledge" were not intended by Congress to nullify all state law protection of holders of equitable interests. *McCannon v. Marston,* 679 F.2d 13, 16 (3rd Cir.1982).

as effectual as the implied notice from a registry of the deed, and as potent in its effects as an actual notice of the existence of the deed, before the judgment was obtained.

Our registry acts place creditors, and subsequent purchasers, upon the same footing, as to unregistered deeds; but the term creditor in the statute, does not mean creditors at large of the grantor, but such creditors as by obtaining a judgment against him, have acquired a lien, without notice of the existence of the deed, either express or implied. That possession by the vendee, is constructive notice of the conveyance, so as to defeat a subsequent purchaser, and prevent the judgment creditor from obtaining a lien. It results from this view, that as the judgment creditor had, by the possession of the complainant, constructive notice of her title, he acquired no lien upon the land, in virtue of his judgment.

*Gulf Oil Corp. v. Beck*, 293 Ala. at 159–60, 300 So.2d at 823.

■ The Alabama Supreme Court has more recently considered the issue of possession as notice in the case of *Touchstone v. Peterson*, 443 So.2d 1219 (Ala.1983). The court noted in that case that it is settled law in Alabama that where a purchaser buys land and has knowledge that a third person is in possession thereof, he is charged with notice of that party's title, including the occupant's equitable rights. *Touchstone v. Peterson*, 443 So.2d 1219, 1225 (Ala.1983). Quoting from *Leslie v. Click*, 221 Ala. 163, 165, 128 So. 170, 172 (1930), the court stated:

A purchaser with sufficient information to stimulate inquiry which would lead to knowledge of adverse or hostile and superior claim or title, and fails therein, the injury is the result of his own folly—he is wanting in good faith, an indispensable element of a purchaser (for value) without notice—and a court of equity will not protect such reckless purchaser.

*Touchstone*, 443 So.2d at 1225 (Citations omitted).

Possession is not, however, an absolute defense for purchasers under an unrecorded deed against the claims of subsequent purchasers and creditors. For possession to operate as notice, it must be "open, visible, exclusive and unambiguous, not liable to be misconstrued or misunderstood." *Lightsey v. Stone*, 255 Ala. 541, 547, 52 So.2d 376, 381 (1951). Thus, the Alabama courts have held possession to be insufficient notice where, for example, the purchaser under the unrecorded deed was in joint possession with the vendor, *Wiggins v. Stewart Bros.*, 215 Ala. 9, 109 So. 101 (1926) (father sold to son); *Autauga Banking & Trust Co. v. Chambliss*, 200 Ala. 87, 75 So. 463 (1917) (creditor without notice of wife's equity); *O'Neal v. Prestwood*, 153 Ala. 443, 45 So. 251 (1907) (wife's possession insufficient) and where a purchaser claimed an adjacent strip of land under an unrecorded deed. *See Lightsey v. Stone*, 255 Ala. 541, 52 So.2d 376 (1951). There must be a visible change of possession; otherwise, a stranger would not be put on inquiry as to the changed status of the title. *Id.* at 547, 52 So.2d at 381–82.

## APPLICATION OF LAW TO FACTS

■ The Trustee asserts that the Tolleys' possession of Lot 42 of Northwood 11 was made ambiguous by the contemporaneous execution of the warranty deed and the rental agreement. His argument is two-pronged. He first asserts that the fact of the contemporaneous execution renders the entire transaction ambiguous. While it is true that the facts present a complicated and confused state of affairs, the Trustee has misread the unambiguous requirement of the cases. That requirement relates to the situation where a conveyance is made after the grantee has been put in possession. It is synonymous with the "visible change of possession" requirement. *See e.g., Lightsey v. Stone*, 255 Ala. 541, 52 So.2d 376 (1951); *Wiggins v. Stewart Bros.*, 215 Ala. 9, 109 So. 101 (1926). Even though the March and April 1980 transaction between the Tolleys, Mr. Taylor and Mr. Smith was confusing and complicated, the Tolleys' moving onto the disputed prop-

**530**

erty on April 12, 1980 was clearly a visible change of possession; and a subsequent purchaser or creditor would be under a duty to inquire of their claim of title. *See Gulf Oil Corp. v. Beck*, 293 Ala. 158, 300 So.2d 822 (1974); *Alexander v. Fountain*, 195 Ala. 3, 70 So. 669 (1916).

The Trustee also argues that of the contemporaneously executed instruments, the lease was intended to be the operative writing and the delivery of the deed was merely conditional. It follows from this argument that possession under the deed would be ambiguous since the Tolleys arguably entered initially as tenants. This argument must fail, however, since the Court has determined that the parties intended the April 8, 1980 transaction to be a sale. The execution of the rental agreement was merely ancillary to the sale and was an attempt to circumvent the "due on sale" clause in the Taylor mortgage. The Tolleys' possession was sufficient to excite inquiry, and inquiry should have led to the discovery of these facts. The Court, therefore, finds that the Tolleys possession under the unrecorded deed was sufficient notice to cut off the claims of subsequent purchasers and creditors.

### CONCLUSION

Although the Tolleys did not comply with the requirements of Alabama Code Section 35–4–90 (1975) by not recording their deed, subsequent purchasers and creditors were put on notice by their continuous possession of the disputed property since April 12, 1980. "Possession of the land, and the exercise of dominion over it ..., is an implied notice, quite as effectual as the implied notice from a registry of the deed ...." *Burt v. Cassety*, 12 Ala. 734, 739 (1848). Because the Court finds that the parties at all times intended the transaction to be a sale and the warranty deed to be the controlling instrument, the Tolleys' possession was not ambiguous.

This memorandum shall constitute the findings of fact and conclusions of law pursuant to Rule 7052 F.R.Bktcy. Proce-

dure. A separate order will be entered consistent with the above opinion.